2011 WY 67

**Jay Allen GRUWELL, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–10–0168.**

Supreme Court of Wyoming.

April 18, 2011.

Representing Appellant: Tara Nethercott and Gay Woodhouse, Woodhouse Roden, LLC, Cheyenne, Wyoming. Argument by Ms. Nethercott.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jessica Y. Frint, Student Director, Prosecution Assistance Program; Samuel T. Hucke, Student Intern, Prosecution Assistance Program. Argument by Mr. Hucke.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Appellant, Jay Allen Gruwell, challenges his conviction on one count of sexual abuse of a minor in the third degree, in violation of Wyo. Stat. Ann. § 6-2-316(a)(iv).[1]

---

1.  Wyo. Stat. Ann. § 6-2-316(a)(iv) (LexisNexis 2009) provides as follows:

   § 6-2-316.   Sexual abuse of a minor in the third degree.

(a) Except under circumstance constituting sexual abuse of a minor in the first or second degree as defined by W.S. 6-2-314 and 6-2-

He contends the district court erred in excluding the testimony of one proposed expert witness and limiting the testimony of another expert witness. He also argues that the district court erred in determining that the child victim was competent to testify at trial. We affirm.

### ISSUES

[¶ 2] Appellant presents the following issues:

1. Did the district court abuse its discretion in excluding Appellant's expert witness, Dr. Fukutaki, thereby denying Mr. Gruwell his right to present a defense and his right to compulsory process?

2. Was it clearly erroneous, based on the record of the competency hearing, for the district court to determine that the five year old A.H. was competent to testify?

3. Did the district court abuse its discretion by limiting the scope of Dr. Denison's expert testimony to only general characteristics of sex offenders and the types of behaviors of the perpetrators who commit these types of alleged crimes?

### FACTS

[¶ 3] During the weekend of May 16, 2009, Appellant traveled to Gillette, Wyoming, to attend his nephew's graduation. On Saturday morning, May 16, Appellant drove to his brother-in-law's house to meet with other family members. Appellant went to the basement to check email on his laptop computer. While Appellant was using his computer, A.H., age 5, asked if she could play a game on the computer. Appellant agreed and they played games on the computer for a while. At some point in time, according to the State, Appellant exposed his penis to A.H. and asked if she wanted to touch it. A.H. ran upstairs, found her mother, and told her that she and Appellant had

been playing a game on his computer, and that Appellant had his "privacy" out and asked her to touch it.

[¶ 4] Two days later, A.H.'s parents contacted the Wyoming Division of Criminal Investigation (DCI) to report the incident. Later that week, DCI agents traveled to Appellant's office in Lusk, Wyoming, to interview him. During the initial interview, Appellant stated that he remembered that his penis was in plain view, but that he did not remember taking it out of his pants. He denied that he asked A.H. to touch it. At the close of the interview, Appellant was told to contact the DCI agents if he remembered anything else. The agents left Appellant's office and headed back to Gillette. A short time later, however, Appellant telephoned the agents and told them that he wanted to speak with them again. The agents returned to Appellant's office for a second interview. During the second interview, Appellant admitted that he had asked A.H. to touch his penis.

[¶ 5] Appellant was subsequently charged with sexual abuse of a minor in the third degree. On September 9, 2009, he pled not guilty to the charged offense. The following day, the court entered a Criminal Case Management Order setting a trial date of December 7, 2009. The Order required the parties to file a list of all witnesses and exhibits no later than three working days before the pretrial conference, which was to be held on November 5. The Order also stated that the defense could be afforded relief from the witness disclosure requirements if the defense filed a motion establishing good cause for relief at least five working days before the pretrial conference. Appellant did not file a motion requesting relief from the disclosure requirements at any time prior to the pretrial conference.

[¶ 6] Appellant filed his pretrial memorandum on November 4. He identified more than thirty potential witnesses, including Dr. Chuck Denison. According to the witness

315, an actor commits the crime of sexual abuse of a minor in the third degree if:

. . .

(iv) Being seventeen (17) years of age or older, the actor knowingly takes immodest,

immoral or indecent liberties with a victim who is less than seventeen (17) years of age and the victim is at least four (4) years younger than the actor.

designation, Dr. Denison was proposed to testify "that his psychosexual evaluation of Jay Gruwell shows him to be a stable person with no indicators of sexual deviance." After the State raised concerns about this testimony at the pretrial conference, the district court requested briefing on the issue. Appellant submitted a memorandum in support of admitting Dr. Denison's testimony. In that memorandum, Appellant acknowledged that Dr. Denison's proposed testimony "may be considered character evidence as allowed under Rule 404(a)(1)," and stated that "[i]f deemed character evidence under 404(a), defense counsel anticipates that the State, if allowed, will then attempt to introduce uncharged misconduct evidence under 404(b), specifically, the allegations of [B.P.]." The substance of that allegation was that Appellant had exposed himself to B.P. when she was 10 or 12 years old. Appellant also filed a motion in limine regarding those allegations, arguing that evidence of the prior incident of alleged misconduct by Appellant should be excluded. The court ruled that the State was prohibited from using the allegations of B.P. in its case in chief, but stated that it "cannot at this time prohibit the use of such allegations in the State's rebuttal case because the allegations may be proper testimony at trial if the defense should open the door to such testimony."

[¶ 7] Appellant did not identify any other expert witnesses aside from Dr. Denison in his November 4 pretrial memorandum, but included the following statement:

> The Defense reserves the right to call additional witnesses in this matter specifically a witness who may testify about the effect that the repeated statements that the agent was not lying to the Defendant during the interrogation and that children like [A.H.] do not lie or have a very low probability that they are lying and other statements to that effect.

On November 30, 2009, Appellant filed a motion to amend his pretrial memorandum seeking to add an additional witness. That motion did not identify any witness by name or provide an explanation for the late notice. The motion stated:

> The Defense reserves the right to call witnesses in this matter who may testify about the children's veracity, the effect of outside influences, and the psychology of children in general. This witness may testify about additional matters in connection with the defense of this matter.

On December 1, 2009, the district court issued an order denying the amendment of Appellant's pretrial memorandum. The court stated that Appellant's request "was filed after the deadlines set in the Criminal Case Management Order in this case and is unnecessarily vague." Further, the court found that "allowing the amendment at this time would be prejudicial to the opposing party."

[¶ 8] On December 2, 2009, three working days prior to trial, Appellant filed a Motion to Reconsider Amended Pretrial Memorandum and identified Dr. Karen Fukutaki as a proposed expert witness. Appellant sought to have Dr. Fukutaki testify as to the "voluntariness of the confession and the psychology relating to confessions." The district court again denied Appellant's motion, finding that it was "filed after the deadlines set in the Criminal Case Management Order" and that "allowing the amendment at this time would be prejudicial to the opposing party."

[¶ 9] Prior to trial, Appellant challenged A.H.'s competency to testify and also requested a taint hearing to determine whether A.H.'s testimony would be tainted by an interview with a forensic examiner from the Child Advocacy Center. The court conducted a hearing on Appellant's motion and determined there was insufficient evidence to support a taint hearing. Appellant does not challenge this ruling. The court also conducted a hearing to determine A.H.'s competency to testify at trial. After questioning the child, the court ruled that A.H. was competent to testify.

[¶ 10] After a three-day jury trial, Appellant was convicted of sexual abuse of a minor in the third degree and was sentenced to four to seven years in prison. He appealed his conviction to this Court. Additional facts will be set forth as necessary in our discussion of the issues.

## DISCUSSION

### Exclusion of Expert Witness

[¶ 11] Appellant contends the district court's decision to exclude the testimony of Dr. Fukutaki violated his right to present a defense under the Sixth and Fourteenth Amendments to the U.S. Constitution, and Article 1, § 10 of the Wyoming Constitution. He argues that Dr. Fukutaki's proposed testimony regarding confessions was crucial to his defense. Appellant asserts that his "entire defense was that he never exposed himself to the victim and this alleged confession was a false confession based on the methods of interrogation." The State contends Appellant gave no indication that he wished to introduce testimony by Dr. Fukutaki regarding the "false confessions" issue until Dr. Fukutaki was identified in his Motion to Reconsider Amended Pretrial Memorandum, which was filed less than three full working days prior to trial. The State argues that late notice of the expert testimony undermines the truth finding purpose of the trial process. It argues that late notice limits the ability to effectively cross-examine the proposed expert and counter the proposed testimony.

[¶ 12] We review a district court's decision to admit or reject expert testimony for an abuse of discretion. *Dean v. State*, 2008 WY 124, ¶ 14, 194 P.3d 299, 303 (Wyo. 2008). Under an abuse of discretion standard, "the ultimate issue is whether or not the court could reasonably conclude as it did." *Breazeale v. State*, 2011 WY 10, ¶ 30, 245 P.3d 834, 843 (Wyo.2011) (quoting *Lawson v. State*, 994 P.2d 943, 947 (Wyo.2000)). "Decisions of the trial court with respect to the admissibility of evidence are entitled to considerable deference and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be reversed on appeal." *Lawson*, 994 P.2d at 947.

[¶ 13] The Compulsory Process Clause of the Sixth Amendment, which is nearly identical to the language in Article 1, § 10 of the Wyoming Constitution,[2] guarantees every defendant "the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. A violation of the Compulsory Process Clause occurs when a defendant is arbitrarily deprived of testimony that would have been relevant, material, and vital to his defense. *Dysthe v. State*, 2003 WY 20, ¶ 5, 63 P.3d 875, 879 (Wyo.2003) (citing *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982)). Although fundamental, "the right to present defense witnesses is not absolute. A defendant must abide the rules of evidence and procedure." *United States v. Dowlin*, 408 F.3d 647, 659 (10th Cir.2005) (quoting *United States v. Bautista*, 145 F.3d 1140, 1151–52 (10th Cir.1998)).

[¶ 14] In *Taylor v. Illinois*, 484 U.S. 400, 414–15, 108 S.Ct. 646, 656, 98 L.Ed.2d 798 (1988), the United States Supreme Court held that a defendant's invocation of the right to present witnesses "cannot automatically and invariably outweigh countervailing public interests." The Court held that the factors to be weighed in the balance include, but are not limited to, "[t]he integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process." *Id.* The Court also noted that the right to compulsory process depends on the affirmative conduct of the defendant:

There is a significant difference between the Compulsory Process Clause weapon and other rights that are protected by the Sixth Amendment—its availability is dependent entirely on the defendant's initiative. Most other Sixth Amendment rights arise automatically on the initiation of the adversary process and no action by the defendant is necessary to make them active in his or her case. While those rights shield the defendant from potential prosecutorial abuses, the right to compel the presence and present the testimony of witnesses provides the defendant with a sword that may be employed to rebut the

---

2. Wyo. Const. art. 1, § 10 states: "In all criminal prosecutions the accused shall have the right to ... have compulsory process served for obtaining witnesses."

prosecution's case. The decision whether to employ it in a particular case rests solely with the defendant. The very nature of the right requires that its effective use be preceded by deliberate planning and affirmative conduct.

*Id.*, 484 U.S. at 410, 108 S.Ct. at 653–54 (footnote omitted). We adopted the *Taylor* factors in *Lawson*. In that case, we held that the exclusion of alibi testimony from a fact witness was an abuse of discretion where the district court failed to consider any factor other than the defendant's failure to comply with the filing date requirement of W.R.Cr.P. 12.1(a) and failed to consider the factors articulated in *Taylor*. *Lawson*, 994 P.2d at 947.

[¶ 15] Appellant contends his right to present a defense was violated because the district court failed to consider the factors identified in *Taylor* for exclusion of witnesses. He argues that this case is similar to *Dysthe*, 63 P.3d 875, a case in which we reversed the district court's decision to exclude the defendant's witnesses. In that case, the district court required the parties to identify their witnesses by November 13, 2000. *Id.*, ¶ 4, 63 P.3d at 878. The State filed a notice of additional witnesses on December 5, 2000, identifying a former drug court employee as a witness. *Id.* On January 25, 2001, the defendant identified two other drug court employees as potential witnesses regarding favorable treatment of the State's primary witness in return for that witness's testimony. *Id.* The State's primary witness apparently believed that he was under pressure from Drug Court personnel to testify and that he would not be prosecuted if he testified. The State objected to the defendant's witnesses, but identified another witness for potential use in rebuttal. *Id.*, ¶ 7, 63 P.3d at 879. In an oral ruling, the district court stated that "the late filing precludes [use of any of the four witnesses named after the November 13 deadline] in the case in chief. If it turns out that, you know, one of you thinks that they are necessary for some sort of proper rebuttal, I'll consider it at that time." *Id.* (Emphasis omitted.) However, when the defendant attempted to impeach the credibility of the State's primary witness with questions that would have made such

rebuttal testimony appropriate, the district court sustained the State's objection. *Id.*, ¶ 8, 63 P.3d at 880. We held that the district court abused its discretion in excluding the defendant's witnesses because it failed to consider any of the *Taylor* factors in enforcing its pretrial deadline and because evidence relating to the possibility of favorable treatment of the State's witness in return for his testimony was relevant, material, and vital to the defense in order to impeach that witness's credibility. *Id.*, ¶ 9, 63 P.3d at 881.

[¶ 16] The present case, however, is distinguishable from *Dysthe*. In addition to Appellant's failure to meet the deadline for disclosure of witnesses set out in the Case Management Order, the district court excluded Dr. Fukutaki's testimony because Appellant's witness designation was "unnecessarily vague" and because admitting the testimony "would be prejudicial to the opposing party." Although there was considerable delay in the defendant's disclosure of his witnesses in *Dysthe*, no mention was made of the proximity of the defendant's disclosure to the date of trial. In this case, Appellant identified Dr. Fukutaki less than three full working days before trial. Further, in contrast to *Dysthe*, the proposed witness in this case was an expert witness, which raises additional concerns about the ability of the adversary process to test the reliability and credibility of the proposed testimony. If Dr. Fukutaki's testimony was to be adequately "tested," so as to facilitate the presentation of reliable evidence, the State must have been provided an opportunity to investigate Dr. Fukutaki's qualifications, review the scientific basis for the proposed testimony, and locate an expert witness with the requisite background who was available to travel to Gillette, Wyoming, for the scheduled trial if the State wished to present rebuttal testimony. Given such short notice by Appellant, however, the State could not have assembled an adequate response to Dr. Fukutaki's testimony prior to trial. The late notice was prejudicial to the State.

[¶ 17] Appellant's failure to timely identify Dr. Fukutaki as an expert witness impinged on each of the concerns identified by the *Taylor* factors. As the Supreme Court

noted in *Taylor*, adherence to procedure is essential to the fairness and reliability of the trial process:

> The principle that undergirds the defendant's right to present exculpatory evidence is also the source of essential limitations on the right. The adversary process could not function effectively without adherence to rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case.
>
> . . .
>
> The defendant's right to compulsory process is itself designed to vindicate the principle that the "ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts." *United States v. Nixon*, 418 U.S. [683,] 709, 94 S.Ct. [3090,] 3108[, 41 L.Ed.2d 1039 (1974)]. Rules that provide for pretrial discovery of an opponent's witnesses serve the same high purpose. Discovery, like cross-examination, minimizes the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony.

*Taylor*, 484 U.S. at 410–12, 108 S.Ct. at 654 (footnote omitted). It is also important to note that the district court, in its Case Management Order, stated that the defense could be afforded relief from the witness disclosure requirements if the defense filed a motion stating good cause for relief at least five working days before the pretrial conference. Appellant, however, never filed such a motion showing good cause and never provided any explanation for his failure to timely identify Dr. Fukutaki. Despite having knowledge of his confession from the inception of the case, Appellant gave notice of his intent to use Dr. Fukutaki as an expert witness fewer than three full working days before the trial. Appellant's right to compulsory process, which depended entirely on his own initiative, was not violated by the district court's refusal to allow Dr. Fukutaki to testify. The district court did not abuse its discretion in denying Appellant's motion to amend his pretrial memorandum.

*Competency Hearing*

[¶ 18] Appellant next asserts that the district court erred in determining that A.H. was competent to testify at trial. Pursuant to W.R.E. 601, any person is competent to be a witness unless he is otherwise disqualified from testifying. "A person is generally competent to testify if he can understand, receive, remember and narrate impressions and is sensible to the obligations of the oath taken before testifying." *Sisneros v. State*, 2005 WY 139, ¶ 32, 121 P.3d 790, 800–01 (Wyo.2005) (quoting *Watters v. State*, 2004 WY 155, ¶ 14, 101 P.3d 908, 914 (Wyo. 2004)). The district court has broad discretion in determining whether a witness is competent to testify. *Sisneros*, ¶ 32, 121 P.3d at 801.

[¶ 19] With regard to children, intelligence, not age, is the guiding criteria in determining the competency of the witness. *Woyak v. State*, 2010 WY 27, ¶ 21, 226 P.3d 841, 851 (Wyo.2010). A five-part test is used to determine the competency of a child witness. The witness must demonstrate the following:

> (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*Id.*, ¶ 20, 226 P.3d at 850–51; *Sisneros*, ¶ 33, 121 P.3d at 801; *Watters*, ¶ 14, 101 P.3d at 914; *Larsen v. State*, 686 P.2d 583, 585 (Wyo. 1984).

[¶ 20] Appellant concedes that A.H. understood the obligation to speak the truth. He argues, however, that the type and number of questions answered by A.H. were not sufficient to establish that A.H. possessed the attributes identified in the remaining factors of the five-part test. Although Appellant acknowledges that "there are no specific guidelines or types of questions that the District Court must follow" in applying the test, he nonetheless argues that the district court

is required to question the witness about her recollection or understanding of the particular events at issue. We do not agree.

[¶ 21] The test does not require the witness at a competency hearing to answer questions about the specific events at issue in a case. Rather, by requiring that the witness have a "memory sufficient" to retain an independent recollection of the occurrence and the "capacity" to relate a memory of the occurrence, the test focuses on the mental abilities of the witness rather than the witness's recollection of specific events. Appellant has not presented any authority which indicates that a child witness must be asked about specific events at a competency hearing, and we find good reason for not imposing such a requirement. As the district court determined in this case, questions relating to the events at issue have the potential to cause unnecessary trauma to the child witness and are not warranted when the witness demonstrates the requisite capacity to receive, remember, and narrate her experience.

[¶ 22] We note that other jurisdictions have concluded that questions regarding specific events at issue in a sex abuse case are *not* required in determining whether a child witness is competent to testify at trial. In *State v. Lanam*, 459 N.W.2d 656 (Minn.1990), the Supreme Court of Minnesota held that a determination as to whether a child witness has the capacity to remember or relate facts does not require questions about the details of the possible testimony:

> In determining competency of a child, the trial court must determine whether the child understands the nature and obligations of an oath and whether the child has "the capacity to remember or to relate truthfully facts respecting which the child is examined." Minn.Stat. § 595.02, subd. 1(*l* ) (1988). The latter requirement does not mean that the court is to question the child on the details of possible testimony, but rather means that the court should determine in a general way whether the child remembers or can relate events truthfully. The jury will judge the child's credibility and decide the weight to assign the testimony.

*Id.* at 659–60. In *State v. Scott*, 501 N.W.2d 608 (Minn.1993), the same court identified an additional reason, aside from potential trauma to the child witness, that questions regarding the events at issue in a sex abuse case should not be asked:

> We stress that cases in which a child appears to have been determined incompetent because the testimony at the competency hearing did not comport with the criminal allegations or earlier statements of the child will be reviewed very closely by this court. The simple reason is that those cases create the appearance that the trial judge did not determine competency, but rather prejudged the facts and determined the child to be incompetent for not testifying to particular facts. If questions about the subject matter are not asked, this problem will not arise. Thus we recommend that questions not be asked about the subject matter of the case during competency hearings.

*Id.* at 615. Other courts have also determined that questions regarding the events at issue in a sex abuse case are not required in determining a child witness's competency. *See, e.g., People v. Trujillo*, 923 P.2d 277, 281 (Colo.Ct.App.1996) ("We hold that questioning a child-witness about the actual events of the charged offense is not required before a determination of his or her competency can be made."); *Commonwealth v. Gamache*, 35 Mass.App.Ct. 805, 626 N.E.2d 616 (1994) (court acted correctly in not requiring the child witness's competence to rest on a recall of the events and circumstances of the crime; only a general ability to observe and remember is required); *State v. Cobb*, 81 Ohio App.3d 179, 610 N.E.2d 1009 (1991) (court did not err in finding the child victim competent, despite the failure to ask the victim questions related to charged offense); *see also* 98 C.J.S. *Witnesses* § 145 (2011); 81 Am.Jur.2d *Witnesses* § 201 (2010); *Kentucky v. Stincer*, 482 U.S. 730, 741, 107 S.Ct. 2658, 2665, 96 L.Ed.2d 631 (1987) ("[Q]uestions at a competency hearing usually are limited to matters that are unrelated to the basic issues of the trial.").

[¶ 23] We agree with the authorities referenced above and conclude that it is

not necessary to ask a child witness about the events at issue in a sexual abuse case in order to determine whether the child witness is competent to testify. Such questions, however, are not precluded as a matter of law.[3] Ultimately, in determining whether a child witness is competent to testify, the decision to ask the child questions regarding the specific events at issue in the case is within the broad discretion of the trial court. *See Sisneros,* ¶ 32, 121 P.3d at 800–01.

[¶ 24] In this case, we are unable to find that the district court abused its discretion in determining that A.H. was competent to testify. A.H. was asked questions about her knowledge, memory, and her awareness of the obligation to tell the truth. *See Larsen,* 686 P.2d at 586. A.H. knew how old she was, where she went to school, the names of her teachers, the name of her brother, how old her brother was, the names of her pets, the names of her friends, the various ways in which she usually traveled to school in the morning, whether she had lived in another house, and the different objects that she and her brother had in their rooms.

■■■ [¶ 25] Upon conclusion of the district court's examination of A.H., the court summarized its evaluation as follows:

Based upon the court's examination, I'm going to find that the witness is qualified to testify. That she expressed an understanding of the obligation to speak the truth. That she has although limited mental capacity on certain things, things that most of us might know such as where we live and that type of thing, at five years old she doesn't know the address. But she does have capacity to express in words the things that she can remember and she clearly has the capacity to understand simple questions when asked. So it would be the finding of the court that for purposes of the trial in this case the witness would be competent to testify.

As we have repeatedly stated, the trial court is in a far better position to judge the demeanor, truth, and veracity of the witness, and we give considerable deference to the

court's findings concerning witness competency. *Baum v. State,* 745 P.2d 877, 880 (Wyo.1987). "We do not presume to place ourselves in the shoes of the trial court in these cases by reading a cold record. The trial court sees the witness' facial expressions, hears inflections in her voice and watches her mannerisms during examination. These observations are a vital part of the ultimate ruling on competency." *Seward v. State,* 2003 WY 116, ¶ 32, 76 P.3d 805, 819 (Wyo.2003) (citing *In Interest of CB,* 749 P.2d 267, 271 (Wyo.1988)). It is also worth noting that at trial, A.H. was able to recall and relate the events leading up to and after the incident, as well as details of the incident itself, including the clothes Appellant was wearing, the position he occupied on the couch, where she was sitting, the game they were playing on the computer, and the location of her mother and other relatives when she ran upstairs to tell her mother what happened.

### Limitation of Expert Testimony

■■■ [¶ 26] In Appellant's final argument, he contends the district court erred in limiting the expert testimony of Dr. Denison. We review for abuse of discretion. *Dean,* ¶ 14, 194 P.3d at 303.

[¶ 27] As noted above, the State raised concerns regarding the potential testimony of Dr. Denison at the pretrial conference. The State requested that they be furnished a copy of Dr. Denison's report and objected to Dr. Denison's proposed testimony, stating that "[Dr. Denison] obviously is going to be called to opine that these events didn't happen because the defendant is perhaps incapable in his mind of engaging in that behavior and I think it's irrelevant. It's highly prejudicial." Defense counsel advised the court that it would provide the State with a copy of the report "as soon as we have it." Defense counsel also advised the court that "[w]e believe it's highly relevant with regard to the issue at hand and whether or not the defendant is ... a sexual deviant. I mean, obviously this is a sexually deviant act and it is

---

**3.** Although 18 USC § 3509(c)(8) (2011) prohibits such questions, there is no similar Wyoming statute.

very important to have someone who is an expert who can testify in that regard." The court subsequently requested briefing from the parties regarding the admissibility of Dr. Denison's testimony.

[¶ 28] In his responsive briefing, Appellant advised the court that "[t]he defense has two proposed uses of Dr. Denison's testimony." One purpose of the testimony was to "assist the jury in understanding the typical behaviors of sexual offenders." The defense also advised the court that it sought to have Dr. Denison "relate such behaviors to Mr. Gruwell." Apparently, Appellant intended to elicit testimony from Dr. Denison to the effect that Mr. Gruwell did not suffer from a sexual disorder and that it was unlikely that someone without a sexual disorder would have committed the charged offense. Appellant recognized that the testimony of Dr. Denison "may be considered character evidence" and that the State, in response, would attempt to introduce testimony regarding specific instances of Appellant's conduct. Appellant was concerned that such evidence would include testimony from B.P., another individual who alleged that she was a victim of similar conduct by Appellant. Appellant advised the court that, if Dr. Denison's testimony would open the door to the presentation of such evidence, Dr. Denison's testimony would be limited to the general characteristics of sex offenders.

[¶ 29] On December 1, 2009, the district court entered an Order Limiting Scope of Expert Testimony relating to Dr. Denison. The Order provided:

1. The court cannot order any testimony suppressed from the State's rebuttal case at this time because the defense may open the door to such testimony.

2. Under WRE 404 the defense may offer any character evidence they feel is appropriate, but the State is allowed to rebut any evidence proffered.

3. The defense expert may testify as to "general characteristics of sex offenders and the types of behaviors of the

perpetrators who commit these types of alleged crimes."

4. Under WRE 702, the defense expert is allowed to give his opinion as long as such opinion does not go to the ultimate fact in this case.

5. The defense expert may not give opinion testimony as to the defendant's guilt.

Appellant contends the district court implicitly determined that Dr. Denison's proposed testimony relating behaviors of sex offenders to Appellant was character evidence. Appellant contends that this determination was error and negatively impacted Appellant's ability to defend against the charge. As we understand Appellant's position, the classification of the proposed testimony as character evidence potentially opened the door for the State to present rebuttal evidence under W.R.E. 405(a) that Appellant wanted to keep from the jury. Stated in procedural terms, if Appellant introduced the proposed testimony, Appellant was concerned that the court would permit the State to introduce evidence regarding other incidents of Appellant's improper sexual conduct with minors. At trial, Dr. Denison presented testimony regarding the general characteristics of sex offenders but did not "relate" those characteristics to Appellant.[4] Appellant contends that Dr. Denison would also have related those characteristics to Appellant but for the district court's erroneous determination that it was character evidence.

[¶ 30] We note initially that we are unable to discern from the record the specific testimony that Appellant sought to elicit from Dr. Denison. Dr. Denison's report, if it existed, is not in the record. It seems undisputed, however, that he would have testified, at a minimum, that Appellant does not possess the personality traits of a typical sex offender. It is also undisputed that Appellant intended to offer the testimony for the purpose of establishing that Appellant could not have committed the charged offense.

---

4. The State did not object to Dr. Denison's testimony regarding the general characteristics of sex offenders. The State sought only to prohibit "the introduction of any testimony from Dr. Denison

regarding his examination of the Defendant and his opinion that the Defendant lacks the ability to commit this offense."

Such testimony is unquestionably character evidence.

[¶ 31]   W.R.E. 404(a) states as follows:

*Character evidence generally.*—Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:

(1) Character of Accused.—Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same.

"Character evidence" is generally defined as "[e]vidence regarding someone's general personality traits or propensities." *Black's Law Dictionary* 595 (8th ed.2004). We have not had occasion to address the admissibility of the type of evidence at issue here, but other jurisdictions that have considered the admissibility of such evidence have found that testimony relating to the defendant's propensity towards sexual deviation is character evidence. *See* Annotation, *Admissibility of Expert Testimony as to Criminal Defendant's Propensity Toward Sexual Deviation,* 42 A.L.R.4th 937. This is true even in the single case that Appellant cites where such testimony has been considered relevant and admissible. *See State v. Richard A. P.,* 223 Wis.2d 777, 793, 589 N.W.2d 674 (Wis.Ct. App.1998) ("Although no Wisconsin case has expressly addressed the admissibility of *the specific kind of character evidence* at issue in this case, certain other case law offers guidance for our decision and support for our conclusion.") (emphasis added).

[¶ 32]   In the instant case, Appellant contends the proposed testimony is not character evidence but is rather "framework" evidence such as exists in cases involving battered-woman-syndrome (BWS). We discussed this issue, in the context of evidence introduced *against* the defendant, in *Ryan v. State,* 988 P.2d 46 (Wyo.1999). In that case, we distinguished testimony relating to BWS from more general "profile" evidence relating to separation violence. We held that testimony regarding separation violence that attempted to explain "the characteristics of batterers and the kind of conduct they tend to exhibit" was inadmissible because it was irrelevant, prejudicial,

and violated the general prohibition against character evidence offered against the defendant in a criminal case. *Id.* at 53, 56. Although we do not address the admissibility of Dr. Denison's proposed or actual testimony in this case, we quote here for the discussion of the contrast between testimony relating to BWS and character evidence:

The prosecutor argued, and the district court agreed, that separation violence is a logical extension of BWS. Ryan argued that under W.R.E. 404(a), such an extension is not admissible. W.R.E. 404(a) prohibits use of evidence of a person's character if used to prove that he acted in conformity therewith. If offered pursuant to W.R.E. 404(b), evidence which implies bad character is admissible for a limited purpose, but not to show conduct conforming to character. A large part of the testimony which portrayed Ryan as an angry and violent person who expressed that violence toward his wife was admitted for W.R.E. 404(b) reasons. That testimony was not offered for the purpose of showing that he acted in conformity therewith, but rather to show motive, intent, or identity. The expert testimony on separation violence, however, was not offered under W.R.E. 404(b), and, therefore, we must determine if it violates W.R.E. 404(a).

. . .

At the outset, we must determine whether separation violence evidence falls within the emerging field of "social framework and syndrome" evidence. In general, BWS and other syndrome evidence is considered a proper subject for expert testimony, and does not implicate the proscription against character evidence. *See* Mueller and Kirkpatrick, 3 *Federal Evidence,* § 351 (2d ed.1994). According to Mueller and Kirkpatrick:

Usually framework and syndrome evidence is offered by prosecutors and relates to the victim, as in sexual assault and child abuse trials. But sometimes it is offered by the defense and relates to defendants, as in the setting of homicide trials of women charged with killing husbands or intimate companions. And typical patterns of usage do not always

hold true, for defendants sometimes offer evidence that patterns of behavior or attitudes in the alleged victim did not fit the syndrome and prosecutors sometimes offer evidence of battered women syndrome in trials of men to explain the victim's behavior.

*Id.* at 633. . . . Expert testimony on BWS which relates to the victim is entirely proper. Evidence concerning the defendant's involvement, however, demands close scrutiny under the character evidence rules. This is so even if reference to the defendant may only be inferred from the testimony.

Bratton did not say that because Ryan was possessed of a violent character he acted in conformity therewith on the night of the murder. She was more subtle, but the effect was the same. After showing that the subjects of the study tended to commit homicide when faced with the prospect of separation, she impliedly invited the jury to group Ryan among those subjects and by this method determine conduct.

Finding guilt by reference to common characteristics of a class of individuals to which one belongs raises the specter of profile evidence. Profile or syndrome evidence is developed through expert testimony and tends to classify people by their shared physical, emotional, or mental characteristics. *State v. Percy,* 146 Vt. 475, 507 A.2d 955, 960 (Vt.1986) (citing 1 J. Weinstein & M. Berger, *Weinstein's Evidence* § 401[10], at 88–91 (1985)). In the context of drug courier profiles, a profile has been characterized as,

an "informal compilation of characteristics often displayed by those trafficking in drugs," and as an " 'abstract of characteristics found to be typical of persons transporting illegal drugs.' " Similarly, Chief Justice Rehnquist has described the profile as essentially an investigative tool involving characteristics recognizable to trained officers. "A 'profile' is, in effect the collective or distilled experience of narcotics officers concerning characteristics repeatedly seen in drug smugglers."

*United States v. Quigley,* 890 F.2d 1019, 1021 (8th Cir.1989) (citations omitted), *cert. denied,* 493 U.S. 1091, 110 S.Ct. 1163, 107 L.Ed.2d 1066 (1990). Translated into the battering spouse context, a profile is a compilation of characteristics repeatedly seen in those who batter their spouses.

. . .

Many courts find profile evidence irrelevant. *Commonwealth v. Day,* 409 Mass. 719, 569 N.E.2d 397 (1991) aptly articulated the reasoning for such a conclusion:

A criminal trial is by its very nature an individualized adjudication of a defendant's guilt or legal innocence. Testimony regarding a criminal profile is nothing more than an expert's opinion as to certain characteristics which are common to some or most of the individuals who commit particular crimes. Evidence of a "child battering profile" does not meet the relevancy test, because the mere fact that a defendant fits the profile does not tend to prove that a particular defendant physically abused the victim.

[569 N.E.2d] at 399. *See also, Percy,* 507 A.2d at 960 (Evidence that other rapists often excused or explained their conduct the way the defendant did was not relevant.); *State v. Clements,* 244 Kan. 411, 770 P.2d 447, 454 (1989) (Evidence which only describes the characteristics of the typical offender has no relevance to whether the defendant committed the crime in question.); *United States v. Simpson,* 910 F.2d 154, 157 (4th Cir.1990) (Proof that a person fits the drug courier profile, unsupported by evidence of drug trafficking, proves nothing.); *State v. Maule,* 35 Wash. App. 287, 667 P.2d 96, 99 (Wash.App.1983) (The relevance of testimony that the majority of child abuse cases involved a male parent figure is not readily discernable.); *State v. Brown,* 370 So.2d 547, 552 (La. 1979) (Unable to see how evidence of drug courier profile is relevant to any issue of innocence or guilt at the trial on the merits.); *Duley v. State,* 56 Md.App. 275, 467 A.2d 776, 780 (1983) (Evidence of child abuser profile is totally irrelevant because it does not tend to prove that the defendant committed the acts of abuse attributed to him.); *United States v. Hernan-*

*dez–Cuartas,* 717 F.2d 552, 555 (11th Cir. 1983), *rehearing denied,* 721 F.2d 822 (11th Cir.1983) (Drug courier profile evidence is nothing more than the opinion of those officers conducting an investigation, and it cannot be used as substantive evidence of guilt.); *State v. Hansen,* 304 Or. 169, 743 P.2d 157, 161 (1987) (That child abusers use certain techniques to get near their victims has no bearing on whether a person who does these things is a child abuser.); and *People v. Bradley,* 172 Ill.App.3d 545, 122 Ill.Dec. 523, 526 N.E.2d 916, 921 (1988) (Evidence showing characteristics of child abuse perpetrators was in no way probative or relevant to the question of whether the defendant committed the crime.).

. . .

Finally, profile evidence is often found to be an impermissible attack on the defendant's character. *See State v. Hester,* 114 Idaho 688, 760 P.2d 27, 33 (Id.1988); *In the Interest of D.L.,* 401 N.W.2d 201, 203 (Iowa App.1986); *People v. Walkey,* 177 Cal.App.3d 268, 223 Cal.Rptr. 132, 138 (1986); *State v. Loebach,* 310 N.W.2d 58, 62–64 (Minn.1981); *Sanders v. State,* 251 Ga. 70, 303 S.E.2d 13, 18 (1983); *Haakanson v. State,* 760 P.2d 1030, 1035–36 (Alaska Ct.App. 1988); and *Bradley,* 122 Ill. Dec. 523, 526 N.E.2d at 921.

We hold that the evidence pertaining to separation violence was inadmissable. Our ruling does not, however, proscribe BWS testimony in general, and we reaffirm our prior decisions which have allowed expert testimony to explain the behavior of a battered spouse. *See Trujillo v. State,* 953 P.2d 1182, [1187] (Wyo.1998).

*Id.* at 53–56 (emphasis and footnotes omitted).

[¶ 33] Appellant contends our precedent holding that testimony relating to BWS is not character evidence also applies to the testimony at issue in this case. However,

cases involving BWS are distinguishable from the present case. First, we distinguished evidence relating to BWS from more general profile evidence in *Ryan* and held that the latter was inadmissible character evidence. Second, a specific statutory provision allows testimony regarding BWS to explain the behavior of a victim, creating an exception to the general prohibition against introduction of character evidence in a criminal case. Wyo. Stat. Ann. § 6–1–203.[5] There is no statutory exception for evidence regarding the typical behaviors of sex offenders. Third, even in cases where BWS evidence is admissible, we have cautioned that "[e]vidence concerning a defendant's involvement demands close scrutiny under the character evidence rules." *Kenyon v. State,* 2004 WY 100, ¶ 21, 96 P.3d 1016, 1025 (Wyo.2004) (citing *Ryan,* 988 P.2d at 55). "This is so even if reference to the defendant may only be inferred from the testimony." *Ryan,* 988 P.2d at 55. In this case, however, Appellant sought to introduce Dr. Denison's testimony in order to directly relate Appellant's character to the behaviors of sex offenders. Such testimony goes even one step further than the "subtle" reference to the defendant induced by the profile evidence that was found to be character evidence in *Ryan.* Dr. Denison's proposed testimony clearly constituted character evidence and we find no abuse of discretion in the district court's determination that the proposed testimony was character evidence.

[¶ 34] Because it was not raised as an issue, we do not specifically address the relevance or admissibility of evidence offered by the defense that pertains to the typical behaviors of sex offenders.

[¶ 35] Affirmed.

---

**5.** Wyo. Stat. Ann. § 6–1–203 states:
(a) The "battered woman syndrome" is defined as a subset under the diagnosis of Post–Traumatic Stress Disorder established in the Diagnostic and Statistical Manual of Mental Disorders III—Revised of the American Psychiatric Association.
(b) If a person is charged with a crime involving the use of force against another, and the

person raises the affirmative defense of self-defense, the person may introduce expert testimony that the person suffered from the syndrome, to establish the necessary requisite belief of an imminent danger of death or great bodily harm as an element of the affirmative defense, to justify the person's use of force.