BOOMGAARDEN, Justice.
[¶1] A jury found Appellant, Miguel Alberto "Michelle" Martinez (Ms. Martinez),[1] guilty of sexual abuse of a minor in the first and second degree. Ms. Martinez seeks reversal of both convictions claiming there is insufficient evidence to sustain them. In addition, Ms. Martinez claims prejudice because the district court precluded her from presenting character evidence pertaining to the victim. We affirm.
ISSUES
[¶2] Ms. Martinez presents two issues, which we rephrase as follows:
I. Did the district court err when it denied Ms. Martinez's motion for judgment of acquittal on both counts?
II. Did the district court err when it denied the admission of character evidence of the alleged victim?
FACTS
[¶3] On March 23, 2017, CM's mother, Amber Freudenstein, invited several friends over to her Casper home, including Ms. Martinez, Jamie Brown, and Andrea Pead. While Ms. Freudenstein's ten-year-old daughter, CM, was at school, the group visited, listened to music, and everyone except Ms. Pead drank alcohol. During this time, Ms. Martinez consumed between one and three pints *496 of rum, and was noticeably "buzzed" and "being goofy."
[¶4] Around 6:30 p.m., Ms. Martinez went to the only bathroom in the residence, which was located upstairs.[2] Ms. Freudenstein testified Ms. Martinez was upstairs for about 20 minutes. By this time, CM had returned home from school and her mother observed her sitting on the couch in the living room when Ms. Martinez went to use the bathroom. CM testified she went upstairs to get a book from her bedroom and use the bathroom, which was across the hall from her bedroom. CM explained she shut the bathroom door but did not lock it. Ms. Martinez entered the bathroom, without knocking, as CM stood to pull up her pants. Ms. Martinez went over to CM and rubbed CM's right breast with Ms. Martinez's hand and put Ms. Martinez's "dingdong" in CM's "private part" in "the front part" of CM's body. CM kicked Ms. Martinez twice and tried to scream, but Ms. Martinez put a hand over CM's mouth and told her to keep it a secret. Just before Ms. Martinez stopped the assault, CM heard someone stomping up the stairs, whom she thought was her little brother, though she could not see him. After Ms. Martinez left the bathroom, CM pulled up her pants and went downstairs.
[¶5] Around 7:00 p.m., Cetera Moore arrived to pick up Ms. Martinez. Ms. Moore's eight-year-old son came into the apartment and attempted to use the bathroom, but it was locked; he went back downstairs. Shortly thereafter, Ms. Martinez came downstairs and left with Ms. Moore and her son to go to Walmart.[3] Ms. Brown and Ms. Pead testified that before Ms. Martinez left, she told CM something along the lines of she "better leave those boys alone or they could penetrate you" or "don't let the boys penetrate you" while Ms. Martinez made a gesture using a thumb and forefinger to make a circle and using another finger to go through the circle, which both witnesses found odd.
[¶6] Once Ms. Martinez was gone, CM told her mother about the incident. CM told her mother Ms. Martinez went into CM's bedroom, cuffed her hand over her mouth, dragged her into the bathroom, grabbed her chest, right breast area, and stuck Ms. Martinez's penis in her. Ms. Freudenstein testified CM was crying, upset, and hysterical. Ms. Freudenstein also described CM as "scared [be]cause she didn't want Michelle to find out."
[¶7] Around 7:34 p.m., Ms. Freudenstein called Ms. Moore and asked her to bring Ms. Martinez back so she could speak with her. Ms. Moore and Ms. Martinez returned to the apartment as requested and a heated confrontation ensued. Ms. Martinez eventually left with Ms. Moore and Ms. Freudenstein called the police.
[¶8] Law enforcement responded around 9:15 p.m. Officer Paschke obtained a brief statement from CM, who was still visibly upset. CM told the officer that "her parents' friend, Michelle, but she's a boy, requested that she go into the bathroom and then, at that point, had touched her" and CM pointed to her chest. She also said Ms. Martinez "put it inside" as she pointed down. When the officer asked CM whether "it" referred to Ms. Martinez's penis, CM "nodded yes," "began crying," and stated that "it hurt inside." At that point, Officer Paschke stopped his questioning, requested Ms. Freudenstein take CM to the hospital for a sexual assault examination, and followed them to the hospital.
[¶9] A nurse began the examination shortly after 10:30 p.m. At trial, the nurse testified CM informed her that after dinnertime, "someone did something to her private spot" and pointed to her breast and female genitalia. CM stated she kicked Ms. Martinez. CM also complained of pain in her genital area. When asked why she had pain there, CM said she had a "dingdong" stuck into her. The nurse noted CM urinated before the exam, because urination can wash away evidence, *497 but that CM had not bathed, washed or defecated. CM did not know whether Ms. Martinez ejaculated, and CM did not report any anal penetration.
[¶10] The nurse further testified that she examined CM, took photographs, gathered DNA evidence, and took CM's clothes for further testing. During the sexual assault examination, the nurse noted redness on the entire perimeter of the labia majora and redness and an abrasion, caused by friction, at the junction of the hymen and the labia minora on both sides. Pictures of the injuries were displayed for the jury. The nurse also noted brown, "fecal-appearing material" from CM's perineum to "way up the back of her butt," but she did not take any samples of the material. Although the nurse would not speculate on time, she believed the redness and abrasions were relatively recent because the vaginal structure heals fairly quickly from minor injuries. The nurse testified that her physical findings were consistent with CM's report of the incident.
[¶11] Meanwhile, law enforcement officers located Ms. Martinez at Ms. Moore's home shortly before 10:00 p.m. Ms. Martinez was fully clothed and passed out on the couch. After waking Ms. Martinez up with a sternum rub, officers permitted her to use the bathroom and put on shoes before they left for the police station. Due to Ms. Martinez's blood alcohol level of .218, officers allowed her to sleep before conducting an interview. Ms. Martinez slept for a few hours, after which, officers videotaped their interview of Ms. Martinez, gathered DNA evidence, and obtained her clothing. During this process, the officers asked Ms. Martinez to "untuck" her penis so that it could be swabbed. The officers noticed a "yellow, frothy" material that they thought was fecal matter on Ms. Martinez's penis.
[¶12] The next morning, a forensic interviewer with Children's Advocacy Project in Casper interviewed CM for approximately an hour. The State played the recorded interview for the jury. During the interview, CM stated that Ms. Martinez touched her "chest up top" and stuck Ms. Martinez's "dingdong" all the way in her "crotch" and "it hurt really bad." CM stated both she and Ms. Martinez were standing up and the front of Ms. Martinez's legs were touching the front of CM's legs. CM further stated Ms. Martinez's "dingdong" went in her "crotch" more than one time and she made a motion consistent with repeated penetration with one of her hands.
[¶13] The State charged Ms. Martinez with sexual abuse of a minor in the first degree for penetrating CM with Ms. Martinez's penis and sexual abuse of a minor in the second degree for touching CM's chest. Ms. Martinez pled not guilty to both charges. The case proceeded to trial, which began on October 16, 2017. During opening statements, defense counsel referenced evidence that CM made "two prior false accusations." The State objected, and the district court heard arguments outside the presence of the jury as to the potential character evidence of the victim. The district court ultimately denied admission of the evidence.
[¶14] After the prosecution rested, the defense moved for judgments of acquittal on both charges contending the State did not meet its burden as to the requisite intention for the elements of sexual intrusion or sexual contact. The defense also argued the State's evidence was insufficient because no DNA evidence linked Ms. Martinez to the victim, and the nurse who examined CM could not identify the cause of her injuries. The court denied the motion. The defense rested after Ms. Martinez declined to testify. The jury returned guilty verdicts on both charges.
[¶15] Defense counsel moved for a new trial on November 2, 2017, claiming the district court erred when it denied admission of the proffered character evidence of the victim. The district court denied the motion for the same reasons it gave at trial.
[¶16] On January 29, 2018, the district court sentenced Ms. Martinez to 30 to 45 years imprisonment for the first-degree charge, and 15 to 20 years of imprisonment for the second-degree charge. The court ordered the sentences to run concurrently and gave 307 days credit for presentence confinement. Ms. Martinez filed a notice of appeal two days later.
*498 DISCUSSION
I. Did the district court err when it denied Ms. Martinez's motion for judgment of acquittal on both counts?
[¶17] Ms. Martinez asserts the district court erred when it denied her motion for judgment of acquittal, contending the State presented insufficient evidence to establish sexual intrusion and sexual contact.
[¶18] We review a motion for judgment of acquittal in the same light as the district court and apply the same standard as that used when an appeal claims insufficient evidence to convict. Foltz v. State , 2017 WY 155, ¶ 10, 407 P.3d 398, 401 (Wyo. 2017) (citation omitted). Accordingly, we accept the State's evidence as true, including all logical and reasonable inferences which can be drawn from it. Id . (citation omitted). We do not consider the defendant's conflicting evidence and we do not reweigh the evidence or re-examine the witnesses' credibility. Id. (citation omitted). We simply determine whether the evidence - direct or circumstantial - could reasonably support the jury's verdict. Id. ¶ 10, 407 P.3d at 401-02 (citation omitted). Applying this standard, a motion for judgment of acquittal is granted only if "a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime." Id. ¶ 10, 407 P.3d at 401 (citation omitted). We conclude the district court did not err when it denied Ms. Martinez's motion for judgment of acquittal.
A. Credibility of CM's Allegations/Lack of Corroborating Evidence
[¶19] Ms. Martinez asserts CM's allegations lack credibility because her version of the events would require the jury to ignore her mother's testimony that CM was on the couch at roughly the same time as Ms. Martinez went upstairs to the bathroom, and ignore Ms. Brown's testimony that Ms. Martinez barged into the bathroom when Ms. Brown was there at approximately 6:30 to 7:00 p.m. - shortly before Ms. Martinez left with Ms. Moore. In other words, Ms. Martinez claims that CM would have been in the bathroom at approximately the same time as Ms. Brown if Ms. Brown's story were true.
[¶20] Ms. Martinez further challenges CM's allegations because it is incredible that Ms. Martinez went into the bathroom when CM was already there, removed her own two pairs of underwear, placed her penis into CM's genitals until it reached CM's perineum without causing any irritation or redness to the perineum or buttocks, removed her penis without smearing any fecal matter on CM's genitals, got dressed, and left the residence without transferring any skin or other cells on either Ms. Martinez's clothing or CM's clothing. Ms. Martinez also argues that aside from ambiguous evidence about redness and abrasions on the "more external parts of CM's genitals," no physical evidence exists whatsoever to support CM's claims of sexual intrusion or the touching of her chest. More particularly, Ms. Martinez asserts DNA evidence should have been found on CM's body if " 'friction' had caused 'abrasions' to CM's genitals."
[¶21] Ms. Martinez ignores our standard of review. As noted above, in evaluating the sufficiency of the evidence to support her convictions, we accept the State's evidence as true and respect the role of the fact-finder to weigh the credibility of the respective witnesses. Foltz , ¶ 10, 407 P.3d at 401-02 (citations omitted). Even though other inferences may be drawn from the evidence, it is the jury's responsibility to resolve conflicts in the evidence. Leyo v. State , 2005 WY 92, ¶ 11, 116 P.3d 1113, 1116-17 (Wyo. 2005) (citation omitted). We therefore decline Ms. Martinez's invitation to substitute our judgment for that of the jury and need not explain how CM's mother's testimony can be reconciled with Ms. Brown's or CM's testimony. CM's testimony alone is sufficient to support the jury's finding that Ms. Martinez sexually assaulted CM as CM described.
[¶22] Ms. Martinez's complaints regarding the lack of DNA or other corroborating evidence similarly lack merit. Wyoming law does not require corroborating evidence to establish sexual intrusion. Wyo. Stat. Ann. § 6-2-311 (LexisNexis 2017) ("Corroboration of a victim's testimony is not necessary to obtain a conviction for sexual assault.").
*499 Nonetheless, the State presented evidence at trial explaining that the lack of DNA evidence was not unusual in this case because such evidence "is typically fragile" and everyday activities such as putting on and removing clothing, wiping, and using the bathroom can remove DNA. CM used the bathroom before her examination; Ms. Martinez used the bathroom at Walmart and before the officers escorted her to the police station. Moreover, the State did present corroborating evidence, including photographs depicting the injuries to CM's labia majora and labia minora, which injuries appeared to have "happened fairly recent." The examining nurse testified her physical findings were consistent with CM's report of the incident. This evidence was sufficient to support the jury's verdict.
[¶23] Finally, while fecal matter was found on Ms. Martinez's penis and CM's perineum and buttocks, the material was not tested to determine if the substance was the same on both CM and Ms. Martinez. There is no evidence regarding when the fecal matter appeared on CM's body. The evidence also does not explain when the fecal matter appeared on Ms. Martinez's penis. The jury, therefore, could reasonably have concluded that the lack of fecal matter on or in CM's genitalia did not create a reasonable doubt as to Ms. Martinez's guilt.
B. Lack of Evidence of Sexual Arousal, Gratification, or Abuse
[¶24] Ms. Martinez asserts the State failed to provide any evidence to support a finding that the sexual intrusion and sexual contact was done for sexual arousal, gratification, or abuse, which Ms. Martinez claims is a required element for both offenses under Wyo. Stat. Ann. § 6-2-301(a)(vi)-(vii) (LexisNexis 2017).
[¶25] We first note that Ms. Martinez misreads the elements required for sexual intrusion under the facts of this case. "Sexual intrusion" is defined as:
(A) Any intrusion, however slight, by any object or any part of a person's body, except the mouth, tongue or penis , into the genital or anal opening of another person's body if that sexual intrusion can reasonably be construed as being for the purposes of sexual arousal, gratification or abuse; or
(B) Sexual intercourse , cunnilingus, fellatio, analingus or anal intercourse with or without emission.
Wyo. Stat. Ann. § 6-2-301(vii)(A)-(B) (emphasis added). CM accused Ms. Martinez of sticking Ms. Martinez's penis in CM's "front part," which renders subsection (vii)(A) inapplicable. Unlike subsection (vii)(A), subsection (vii)(B) does not require proof of specific intent that the "intrusion" was done for the "purposes of sexual arousal, gratification or abuse." Consequently, we reject Ms. Martinez's contention that the conviction for sexual intrusion must fail because the State did not present evidence of Ms. Martinez's specific intent.[4]
[¶26] Ms. Martinez is correct, however, that specific intent is required to support a conviction for sexual contact. "Sexual contact" is defined as "touching, with the intention of sexual arousal, gratification or abuse , of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim, or of the clothing covering the immediate area of the victim's or actor's intimate parts[.]" Wyo. Stat. Ann. § 6-2-301(a)(vi) (emphasis added).[5] "[W]here a statute criminalizing sexual contact contains an element of sexual gratification, it is not enough to establish that the defendant merely touched the *500 sexual or intimate parts of an individual." Trumbull v. State , 2009 WY 103, ¶ 13, 214 P.3d 978, 981 (Wyo. 2009). "Because direct evidence of intent is rare, and circumstantial evidence is most often the only proof available, we have held that intent may be proven by circumstantial evidence alone." Jones v. State , 2017 WY 44, ¶ 34, 393 P.3d 1257, 1265 (Wyo. 2017) (citation omitted). In that regard, we look to the "defendant's conduct and circumstances of physical contact." Trumbull , ¶ 13, 214 P.3d at 981 (emphasis omitted) (citing 2 Paul DerOhannesian II, Sexual Assault Trials , § 16.19 (Instructions concerning the element of intent-Sexual gratification in touching or sexual contact), 326 (3rd ed. 2006) ). For example, a defendant's warning to the victim "not to tell" indicates a consciousness of wrongdoing and leads to an inference that the defendant "harbored a specific intent to arouse and gratify his own sexual desire." Gregory v. State , 56 S.W.3d 164, 172 (Tex. App. 2001) (citation omitted).
[¶27] Looking at indicia of specific intent in this case, CM testified that when the two were alone in the bathroom, and CM was only partially clothed, Ms. Martinez rubbed CM's right breast/chest area with her hand and then placed Ms. Martinez's penis in CM's genitalia repeatedly. Thereafter, Ms. Martinez told CM to "keep it a secret" and left the bathroom. Rational jurors could reasonably conclude from this evidence that Ms. Martinez touched CM for sexual arousal or gratification. See, e.g. , Jones , ¶ 35, 393 P.3d at 1265.
II. Did the district court err when it denied the admission of character evidence of the alleged victim?
[¶28] Ms. Martinez asserts the district court erred when it precluded her from presenting character evidence pertaining to CM and claims the error was prejudicial. At trial, Ms. Martinez desired to present evidence concerning two "reports" of abuse involving CM. Ms. Martinez concedes the first of those reports is inadmissible under Wyoming's rape shield statute, Wyo. Stat. Ann. § 6-2-312 (LexisNexis 2017). However, she alleges the district court misapplied the rape shield statute to preclude admission of Ms. Freudenstein's proffered testimony that CM's falsely accused her stepfather, James Apel, of physical abuse. The State responds that the district court provided three valid, independent reasons for excluding the character evidence: (1) defense counsel failed to provide notice prior to trial as required by the rape shield statute, (2) the physical abuse allegation was not probative of CM's untruthfulness because the allegation was merely "unsubstantiated" and not "false," and (3) the proffered testimony was inadmissible hearsay.
[¶29] We review evidentiary rulings for an abuse of discretion and give considerable deference to those rulings. See Cardenas v. State , 2014 WY 92, ¶ 7, 330 P.3d 808, 810 (Wyo. 2014) (citation omitted). We will not disturb an evidentiary ruling on appeal if it is premised on a legitimate basis. Id. In applying the abuse of discretion standard, "we can affirm on any legal ground appearing in the record." Leach v. State , 2013 WY 139, ¶ 19, 312 P.3d 795, 799 (Wyo. 2013) (citation omitted). We will reverse only if the defendant demonstrates prejudice, even if we conclude the district court abused its discretion. See, e.g. , Garriott v. State , 2018 WY 4, ¶ 20, 408 P.3d 771, 780 (Wyo. 2018) (citation omitted); Gonzalez-Ochoa v. State , 2014 WY 14, ¶ 11, 317 P.3d 599, 603 (Wyo. 2014) (citation omitted).
[¶30] Defense counsel informed the jury during opening statements that it would hear evidence about CM's "prior false accusations." The State objected, and the district court held a bench conference. Pertinent to this appeal, defense counsel explained his desire to introduce Ms. Freudenstein's statement that CM made a false allegation of physical abuse against CM's stepfather, which was deemed unsubstantiated after the Department of Family Services (DFS) investigated. The district court heard brief arguments on the issue, but suggested the matter be addressed further after opening statements concluded.
[¶31] Later in the proceedings, defense counsel informed the district court he intended to introduce CM's prior allegation of physical abuse through Ms. Freudenstein, or possibly *501 CM or Mr. Apel. He explained the evidence would come in "under their character for truthfulness especially under the victim's and then potentially impeachment or extrinsic evidence of that," and that the evidence was "probative as to the character of the victim." The State argued Ms. Freudenstein's statement was inadmissible because (1) it was based on hearsay and not personal knowledge, (2) CM's allegation of abuse was not a "false statement" simply because it was "unsubstantiated," (3) the statement lacked relevance, (4) the statement had little or no probative value, and (5) defense counsel failed to provide notice as required by the rape shield statute.
[¶32] The district court ruled that the rape shield statute covered the statement, noted that defense counsel had not complied with the statute's notice requirements, and sustained the State's objection to the proposed evidence on that basis.[6] However, the district court also stated that it was unsure whether Ms. Freudenstein might have personal knowledge about CM's reported physical abuse. For that reason, the court permitted counsel to examine Ms. Freudenstein outside the presence of the jury to determine whether the proffered testimony was admissible.
[¶33] On direct examination, Ms. Freudenstein testified she spoke to an officer during the investigation of CM's sexual assault case and informed him that she was aware of, but did not believe, a prior allegation CM made that her stepfather hit her while Ms. Freudenstein was working. Ms. Freudenstein testified that "CPS" spoke to her, Mr. Apel, and CM about the incident and determined it was not true.[7] Notably, however, in response to the State's cross-examination, Ms. Freudenstein admitted she knew nothing of the incidents other than what other people told her. She testified that she never saw anything herself, had no personal knowledge of the incidents, and that CM never told her she made the accusation. Instead, Ms. Freudenstein testified that she thought the accusation was what the "teacher was just saying." She confirmed she did not know what CM actually said to anyone concerning Mr. Apel and confirmed she did not even know if CM told anyone Mr. Apel physically abused her. Nevertheless, Ms. Freudenstein testified it was her own personal belief that any accusation Mr. Apel physically abused CM was not true. Ms. Freudenstein further testified that she received a letter from "CPS" stating the allegation was unsubstantiated and DFS closed the case.
[¶34] After hearing Ms. Freudenstein's testimony and further arguments from counsel, the district court ruled the evidence was inadmissible on three separate grounds: (1) the evidence fell under the purview of rape shield statute and was inadmissible because CM did not recant the allegation, (2) the evidence lacked probative value because "unsubstantiated" does not mean "false," and (3) Ms. Freudenstein's testimony was hearsay without reference to a valid exception. For each of those independent reasons, the court would not permit the defense to cross-examine Ms. Freudenstein about CM's alleged false report of physical abuse.
[¶35] Although the district court initially ruled the evidence was inadmissible under Wyoming's rape shield statute, we need not reach that issue because the proffered evidence is otherwise inadmissible due to Ms. Freudenstein's demonstrated lack of clarity and personal knowledge, and the negligible probative value of a single, unsubstantiated physical abuse accusation. As the district court observed, CM's unsubstantiated allegation is simply not probative of a predisposition to lie. W.R.E. 403, 404(a), 405, 608. DFS never concluded that CM lied; rather, *502 DFS concluded that CM's physical abuse accusation was unsubstantiated, which meant it was "not supported by a preponderance of the evidence." Wyo. Stat. Ann. § 14-3-202(a)(x) (LexisNexis 2017). One unsubstantiated claim simply does not demonstrate a pertinent character trait for untruthfulness as required by W.R.E. 404(a)(2). See, e.g. , Gruwell v. State , 2011 WY 67, ¶ 31, 254 P.3d 223, 233 (Wyo. 2011) (quoting Black's Law Dictionary 595 (8th ed. 2004) ) (emphasis added) (" 'Character evidence' is generally defined as '[e]vidence regarding someone's general personality traits or propensities .' "); Hunter v. State , 307 P.3d 8, 16 (Alaska Ct. App. 2013) (explaining that a person's underlying character for truthfulness must be distinguished from an individual act of untruthfulness); State v. Eugenio , 219 Wis.2d 391, 404, 579 N.W.2d 642 (1998) (stating "[c]haracter is evinced by a pattern of behavior ... over the course of time[,]" and, thus, "a single instance of falsehood cannot imply a character for untruthfulness just as demonstration of a single instance of truthfulness cannot imply the character trait of veracity.").
[¶36] In sum, Ms. Freudenstein's proffered testimony related to a specific instance wherein she claimed CM made a false allegation of physical abuse. Ms. Freudenstein's testimony was based largely on hearsay and not on personal knowledge, was not in the form of opinion or reputation, and wholly failed to demonstrate a "generalized" character trait for untruthfulness, and, for all these reasons was not admissible under W.R.E. 403, 404, 405, 602, 608, and 802. See Gruwell , ¶ 31, 254 P.3d at 233 (citation omitted). The district court did not abuse its discretion when it precluded Ms. Martinez's proffered character evidence pertaining to CM.
CONCLUSION
[¶37] The record contains sufficient evidence to sustain Ms. Martinez's convictions for sexual abuse of a minor in the first and second degree. We also conclude the district court did not err when it ruled the defense's proffered character evidence was inadmissible. We therefore affirm the Judgment and Sentence.

Appellant is a transgender individual who identifies as a female.

Ms. Brown testified she went to use the bathroom around 6:30 or 7:00 p.m. and, while doing so, Ms. Martinez walked in without knocking. Ms. Brown stated she left, went back downstairs, and Ms. Moore arrived shortly thereafter to pick up Ms. Martinez.

Surveillance footage shows Ms. Martinez entered the store at 7:30 p.m. She picked up some medication from the pharmacy, used the bathroom, and left approximately 20 minutes later.

We also have repeatedly held that "sexual intercourse is accomplished in a legal sense if there is the slightest penetration of the genital organs of the female by the sexual organ of the male." Pryor v. State , 2009 WY 95, ¶ 9, 212 P.3d 635, 637 (Wyo. 2009) (citing LP v. Natrona Cty. Dep't of Public Assistance and Social Servs. , 679 P.2d 976, 993-94 (Wyo. 1984) ; Rhodes v. State , 462 P.2d 722, 726 (Wyo. 1969) ; State v. Hines , 79 Wyo. 65, 74-75, 331 P.2d 605, 607-08 (1958) ). Unlawful sexual intrusion does not require the vaginal cavity to be fully entered; rather, it is sufficient to sustain a conviction "if there is entry of the male organ into the labia or vulva." Id. (citing LP , 679 P.2d at 994 ; Rhodes , 462 P.2d at 726 ).

"Intimate parts" is defined as "the external genitalia, perineum, anus or pubes of any person or the breast of a female person [.]" Wyo. Stat. Ann. § 6-2-301(a)(ii) (emphasis added).

When a defendant desires to introduce evidence of a victim's prior sexual conduct, or reputation or opinion evidence as to her character, the rape shield statute requires the defendant to file a motion with the trial court no less than ten days prior to trial and make an offer of proof establishing the relevance and admissibility of the evidence by affidavit. Wyo. Stat. Ann. § 6-2-312 ; see also McGarvey v. State , 2014 WY 66, ¶ 17, 325 P.3d 450, 455 (Wyo. 2014). If warranted, the trial court must conduct a hearing to determine if the probative value of the evidence substantially outweighs the potential prejudice. Id.

Ms. Freudenstein referred to DFS as 'CPS' throughout her testimony.