# IN THE SUPREME COURT, STATE OF WYOMING

## 2025 WY 61

**APRIL TERM, A.D. 2025**

**May 30, 2025**

JUSTIN ARMANDO MARQUEZ,

Appellant
(Defendant),

v.

S-24-0254

THE STATE OF WYOMING,

Appellee
(Plaintiff).

---

*Appeal from the District Court of Natrona County*
The Honorable Joshua C. Eames, Judge

*Representing Appellant:*
> Brandon T. Booth, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Sean H. Barrett, Senior Assistant Appellate Counsel. Argument by Mr. Barrett.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General. Argument by Mr. Woykovsky.

*Before BOOMGAARDEN, C.J., and FOX\*, GRAY, FENN, and JAROSH, JJ.*

---

\* Justice Fox retired from judicial office effective May 27, 2025, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), she was reassigned to act on this matter on May 28, 2025.

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]   A jury convicted Justin Marquez of second-degree murder.  On appeal, Mr. Marquez asserts the district court abused its discretion in denying his motion to designate an expert witness after the deadline ordered by the district court.  He also alleges the district court erred in denying two motions to suppress—one alleging the search of his vehicle exceeded the scope of the warrant and the other alleging the warrant and accompanying affidavits contained misrepresentations and omissions.  We affirm.

## ISSUES

[¶2]   Mr. Marquez states three issues on appeal, which we rephrase as two:

1.  Did the district court abuse its discretion in denying Mr. Marquez's untimely motion to designate an expert witness?

2.  Did the district court err in denying Mr. Marquez's motions to suppress evidence obtained in the searches of his vehicle?

## FACTS

[¶3]   In July 2021, Ryan Schroeder was reported missing, prompting an investigation by the Casper Police Department.  His last known whereabouts were in the Denver area toward the end of June 2021.  After obtaining Mr. Schroeder's cell phone records, the investigation revealed numerous calls and texts between Mr. Schroeder and Mr. Marquez in June 2021.  The last calls and texts between the two men were on June 25 and 26.  After June 26, 2021, there were no outgoing calls or texts from Mr. Schroeder's cell phone.

[¶4]   On August 12, 2021, detectives interviewed Mr. Marquez at his Casper home regarding Mr. Schroeder's disappearance, at which time Mr. Marquez indicated he had been in Denver about a month earlier.  He also told the detectives Mr. Schroeder called him from Denver in late June and asked for a ride, but that Mr. Marquez declined to go pick him up.

[¶5]   Detectives also interviewed Jeremiah Cox.  Mr. Cox and Mr. Schroeder spent several evenings partying together in June 2021 while Mr. Schroeder was visiting Denver.  Around June 24, Mr. Schroeder told Mr. Cox he wanted to go back to Casper, but Mr. Cox declined to give him a ride because he was out of money.  Mr. Schroeder later told Mr. Cox that he had found a ride, and they spent the night of June 25, 2021, partying in Thornton, Colorado.  According to Mr. Cox, a man who Mr. Schroeder seemed to know and who called himself "Fat Man" showed up and partied with them.  Mr. Cox last saw Mr. Schroeder on June 26, 2021, when Mr. Schroeder got into a "maroon, reddish SUV" with "Fat Man."  At trial, Mr. Cox confirmed "Fat Man" was Mr. Marquez.

1

[¶6]    After obtaining a warrant for Mr. Marquez's cell phone records, detectives determined Mr. Marquez had been in Thornton on June 25, 2021.  They also learned Mr. Marquez owned a maroon Hyundai SUV.  In speaking with Mr. Marquez's sister, Detective Keri Patrick learned that Mr. Marquez parked the Hyundai at a storage lot in Casper and covered it with a tarp, which Mr. Marquez's sister said was "unusual."  After confirming the Hyundai was at the storage lot, Detective Patrick obtained a search warrant and had Mr. Marquez's Hyundai towed to a nearby facility for inspection.

[¶7]    During her search of the Hyundai, Detective Patrick observed "a distinct odor of decomposition" and saw apparent blood stains throughout the vehicle's interior.  Blood stains were also found on the center console, and there was a pool of blood under the carpeting.  Forensic testing later revealed a strong likelihood the blood in the Hyundai was Mr. Schroeder's.  In addition, Detective Patrick observed a bottle of cleaning agent inside the vehicle on the driver's side floorboard.

[¶8]    Police then obtained a warrant to install a GPS tracker on Mr. Marquez's other vehicle, hoping Mr. Marquez would lead them to Mr. Schroeder's body.  After doing so, Detective Patrick called Mr. Marquez's sister and asked her about property the family previously owned on Casper Mountain.  According to Detective Patrick, she did so hoping Mr. Marquez's sister would tell her brother police were looking near the property, prompting him to check on and lead them to Mr. Schroeder's body.  The tactic was successful and, on August 30, 2021, authorities found Mr. Schroeder's badly decomposed body on a creek bed that ran through an abandoned ranch.   They also found various items at the scene, including a knife, a wooden dowel, a battery for an LG cell phone, a partially burned size 5XL T-shirt, a towel, and a bottle of bleach.

[¶9]    Authorities later obtained a search warrant for Mr. Marquez's home, where they found a receipt for the wooden dowel, an LG cell phone that fit the battery found near Mr. Schroeder's body, and size 5XL t-shirts.  An autopsy of Mr. Schroeder's body determined he died from multiple stab wounds that occurred within a relatively short timeframe.

[¶10]  The State charged Mr. Marquez with second-degree murder on September 3, 2021.  Proceedings were delayed for approximately two years due to concerns about Mr. Marquez's competency, although the district court eventually found Mr. Marquez competent to stand trial.  The district court entered a scheduling order on September 21, 2023, setting Mr. Marquez's expert witness designation deadline as November 5, 2023, and scheduling a jury trial to start on February 26, 2024.  The order also provided that witnesses not properly designated would be prohibited from testifying absent good cause.

[¶11]  On September 21, 2023, Mr. Marquez filed a motion to suppress all evidence on the ground that the search of his Hyundai was not within the scope of the search warrant.  Specifically, Mr. Marquez asserted the warrant allowed a search of the premises where the

2

Hyundai was located, but not the Hyundai itself. While the warrant was captioned as State of Wyoming vs. "2008 Maroon Hyundai," with a registration number and a VIN, the box to search the vehicle was not checked. Instead, in two separate places on the warrant, the box to search "on the premises" was checked, although no description of a premises or address was listed. After a hearing at which Detective Patrick testified that she mistakenly left the "on the premises" boxes checked instead of the "in the vehicle" boxes, the district court found that the Hyundai was described with particularity and was the intended subject of the warrant, and therefore denied the motion to suppress.

[¶12] Mr. Marquez filed a second motion on December 16, 2023, asserting the allegations in the warrant and the accompanying affidavit from Detective Patrick included material misrepresentations and omissions, as well as unverified information from witnesses. At Mr. Marquez's request, the district court held a hearing pursuant to the United States Supreme Court decision of *Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 2681, 57 L.Ed.2d 667 (1978) (*Franks* hearing). The district court subsequently entered an order denying the motion due to Mr. Marquez's failure to carry his burden of proving Detective Patrick made false statements either knowingly and intentionally or with reckless disregard for the truth. In addition, the district court found that setting aside the information from the warrant to which Mr. Marquez objected, there still would have been probable cause to search Mr. Marquez's Hyundai.

[¶13] Mr. Marquez did not file an expert witness designation on or before the district court's November 5, 2023, deadline. However, on February 20, 2024, less than a week before his jury trial was to begin, Mr. Marquez filed a motion seeking to designate James Donahue as an expert witness to "educate the jury about the heightened dangers of knives and other edged weapons in close quarters." According to the motion, Mr. Marquez was previously hesitant to share information with his attorneys, but a few days prior disclosed information to defense counsel that caused them to adjust the defense strategy to incorporate self-defense.

[¶14] Also on February 20, 2024, Mr. Marquez separately filed a motion to continue the trial based upon the need to retain Mr. Donahue as an expert witness. In the motion, Mr. Marquez's counsel similarly explained that historically Mr. Marquez had been reluctant to discuss the details of his case with his counsel, but that he revealed information on February 16, 2024, that caused counsel to "adjust[] the defense strategy to incorporate self-defense." Mr. Marquez also filed a waiver of his right to a speedy trial the same day.

[¶15] The district court held a hearing on the motions on February 22, 2024. At the conclusion of the hearing, the district court denied the motion to continue on the ground that the information Mr. Marquez disclosed at the eleventh hour was not new and was instead available to him for the entirety of the case. The district court then stated it would take the motion to designate Mr. Donahue as an expert witness under advisement, although the court explained it was inclined to deny the motion. Later that day, the district court

3

entered an order denying the motion to designate Mr. Donahue as an expert witness on various grounds, most of which were also discussed at the hearing earlier in the day. Specifically, the district court concluded that Mr. Marquez failed to provide good cause, the proposed designation did not meet the district court's substantive requirements for an expert designation, and permitting the late designation would prejudice the State. The district court also found Mr. Marquez could pursue his claim of self-defense through properly designated witnesses, cross-examination of the State's witnesses, counsel's arguments, and jury instructions. Finally, the district court reiterated a continuance was not "an adequate remedy" because the information forming the basis for the self-defense theory was known to Mr. Marquez from the outset of his case.

[¶16] After a five-day jury trial where Mr. Marquez testified that he killed Mr. Schroeder in self-defense, the jury found Mr. Marquez guilty of second-degree murder. The district court entered judgment against Mr. Marquez and sentenced him to seventy years to life in prison. Mr. Marquez timely appealed.

## DISCUSSION

### I.     The district court did not err in denying Mr. Marquez's untimely motion to designate an expert witness.

[¶17] Mr. Marquez contends the district court's exclusion of Mr. Donahue's testimony was an abuse of discretion and violated his rights to present his defense and compulsory process under the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, § 10 of the Wyoming Constitution. He argues Mr. Donahue's testimony was critical to his theory of self-defense, and that his delay in providing information to his counsel until shortly before trial constituted good cause for the late designation of Mr. Donahue.

[¶18] This Court reviews a district court's decision to exclude expert testimony for an abuse of discretion. *Gruwell v. State*, 2011 WY 67, ¶ 12, 254 P.3d 223, 227 (Wyo. 2011) (citing *Dean v. State*, 2008 WY 124, ¶ 14, 194 P.3d 299, 303 (Wyo. 2008)). Under that standard, the ultimate issue is whether the district court could reasonably conclude as it did. *Id.* (citing *Breazeale v. State*, 2011 WY 10, ¶ 30, 245 P.3d 834, 843 (Wyo. 2011)). Decisions as to admissibility of evidence "are entitled to considerable deference and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be reversed on appeal." *Id.* (quoting *Lawson v. State*, 994 P.2d 943, 947 (Wyo. 2000)).

[¶19] In his motion to designate Mr. Donahue as an expert witness, Mr. Marquez explained that Mr. Donahue is a military veteran and retired law enforcement officer with specialized training in, among other things, "defensive techniques when engaged with knives, and the use of deadly force." The motion went on to state in relevant part:

4

Mr. Donahue is expected to testify as a "teaching" expert, who will educate the jury about the heightened dangers of knives and other edged weapons in close quarters.

The purpose of the testimony is to educate the jury about close quarters combat, particularly regarding the increased lethality of knives versus other weapons, and to dispel commonly held misconceptions about these that are not based in the law or in reality. Despite the commonly held belief that one "should not bring a knife to a gunfight," this testimony is specialized knowledge based on extensive law enforcement training and experience that knifes [sic] are far more deadly than any other weapon, including firearms, during a close proximity engagement. It is needed to educate the jury and to dispel common misconceptions held by lay persons unfamiliar with close quarters combat.

***

For instance, all law enforcement are taught as part of their training that a suspect armed with a knife is far more dangerous than a suspect with firearm if that suspect is within fifteen feet of the officer. Knifes [sic] are non-directional deadly weapons capable of inflicting deadly force without aiming, and close quarters combat is exceptionally dangerous if a knife or other edged weapon is present. Mr. Donahue is expected to testify that consistent with his training and experience, the use of deadly force is expected and preferred if an officer is attacked by a suspect with a knife, even if there is room to retreat due to the exceptional danger that knives present when a suspect is within fifteen feet of the officer.

This type of testimony is necessary because the average lay person may know that knives are deadly, but the average lay person does not know or understand that extreme danger or lethality of knives in close quarters. It is specialized knowledge that is taught to law enforcement and military personnel specifically to educate them about this exceptional danger that is not readily apparent or known.

It is expected that the expert will provide limited anecdotal testimony regarding his personal experiences to further clarify

5

his testimony and to properly educate the jury on this topic that is unknown to the lay person.

\*\*\*

Mr. Donahue is available to testify consistently with the Defendant's theory of defense, which is self-defense within the confined space of a small SUV. The specialized knowledge and experience of Mr. Donahue is essential testimony to explain why the Defendant did not simply exit the SUV after Mr. Schroeder brandished a knife and made threats toward the Defendant.

At the motion to suppress hearing, Mr. Marquez provided a substantially similar description of Mr. Donahue's proposed testimony.

[¶20] The Compulsory Process Clause of the Sixth Amendment and Article 1, § 10 of the Wyoming Constitution are nearly identical. *Gruwell*, ¶ 13, 254 P.3d at 227. The Sixth Amendment guarantees every defendant "the right ... to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Article 1, § 10 of the Wyoming Constitution provides that "[i]n all criminal prosecutions the accused shall have the right to ... have compulsory process served for obtaining witnesses." "A violation of the Compulsory Process Clause occurs when a defendant is arbitrarily deprived of testimony that would have been relevant, material, and vital to his defense." *Gruwell*, ¶ 13, 254 P.3d at 227 (citing *Dysthe v. State*, 2003 WY 20, ¶ 5, 63 P.3d 875, 879 (Wyo. 2003)) (internal citation omitted).

[¶21] However, as we explained in *Lawson*, even though the right to present defense witnesses is fundamental, it is not absolute if it is outweighed by countervailing public interests. *Lawson*, 994 P.2d at 947 (citing *Taylor v. Illinois*, 484 U.S. 400, 414-15, 108 S.Ct. 646, 656, 98 L.Ed.2d 798 (1988)). We then adopted the following test from the United States Supreme Court's decision in *Taylor v. Illinois*:

The factors to be weighed in the balance include, but are not limited to those relevant to the integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process.

*Id.* at 946 (quoting *Taylor*, 484 U.S. at 414-15). In *Lawson*, we found the district court abused its discretion when it excluded alibi testimony from a fact witness based solely on

6

defendant's failure to designate the witness by the filing deadline. *Lawson*, 994 P.2d at 947.

[¶22] In contrast, in *Gruwell* we upheld the district court's decision to exclude an expert witness who defendant designated to testify about the voluntariness of his confession and the psychology related to confessions. There, the defense first identified the expert witness three business days prior to trial, even though Mr. Gruwell knew about his confession from the outset of the case. As a result, the district court concluded permitting the expert witness to testify would be prejudicial to the State. *Gruwell*, ¶¶ 8, 17, 254 P.3d at 227, 229. As we explained, the failure to timely designate the expert witness "impinged on each of the concerns identified by the *Taylor* factors." *Id.*, ¶ 17, 254 P.3d at 228-29. We therefore concluded that Mr. Gruwell's "right to compulsory process, which depended entirely on his own initiative, was not violated by the district court's refusal to allow [the expert witness] to testify," and that the district court did not abuse its discretion. *Id.*

[¶23] In Mr. Marquez's case, the district court's decision did not rest solely on the untimeliness of the expert witness designation. Rather, and like *Gruwell*, the district court found the disclosure was late because of Mr. Marquez's own conduct. Specifically, the information about acting in self-defense was known to him the entire two and one-half years his case was pending. The district court also found the late designation did not meet the requirements the court set forth in its scheduling order, including that parties provide a summary of expected testimony and how the proposed testimony would apply to the facts of the case. As a result, the State did not have sufficient information to determine whether to hire a rebuttal expert. Finally, the district court found Mr. Marquez could pursue his self-defense claim without Mr. Donahue as a witness, and alluded to the fact that Mr. Donahue's proposed testimony might not qualify as expert testimony under Wyoming Rule of Civil Procedure 702.

[¶24] The district court did not violate Mr. Marquez's right to compulsory process or abuse its discretion when it found Mr. Marquez failed to establish good cause for his late attempt to designate Mr. Donahue as an expert witness and continue the trial. Most significantly, it was reasonable for the court to conclude that Mr. Marquez's own conduct was the reason for the delay in designating Mr. Donahue. *Gruwell*, ¶ 17, 254 P.3d at 229. It was also reasonable for the district court to deny a continuance for this very same reason. As the court explained:

> I would find that this is not new information; that this was information available to the defendant for the entirety of this case. A defendant cannot make information that he has available to him new information or evidence that may necessitate a continuance simply by when he chooses to share that information to counsel. A defendant cannot create the circumstances for a continuance by his own actions.

7

[¶25] The district court's conclusion that the designation did not sufficiently disclose Mr. Donahue's proposed testimony and that the State would be prejudiced by the late designation was also reasonable. As was the case in *Gruwell*, the late designation undermined the integrity of the adversarial process, as the State was not given adequate time to test the reliability and credibility of the testimony and assemble an adequate response, including possibly through a rebuttal expert witness. *Id*. at ¶ 16, 254 P.3d at 228.

[¶26] The district court also reasonably concluded Mr. Marquez could pursue his self-defense claim without Mr. Donahue's proposed testimony. A review of the record demonstrates Mr. Marquez did in fact present his self-defense claim, and nothing about the exclusion of Mr. Donahue as a witness impeded his ability to do so. In his opening statement, Mr. Marquez's trial counsel told the jury it was going to hear testimony from Mr. Marquez about why Mr. Schroeder was killed, noting "[w]hy is the most important question." Mr. Marquez then testified extensively about the events leading up to a confrontation between himself and Mr. Schroeder that occurred while they were parked outside of Mr. Marquez's Casper home:

> And then he was, like, he pulls out a knife and he's staring at it and he tells me he's, like, you know, I got lots of people, you know. You know these people. They're serious people. You know, you can help take care of me or I can take care of you. And so I told him to get out, you know. And he says, well, how about your sisters. And so he says how about them? You want to see them again? And I was – I told him f*** you, get out of my car. And he took his knife and he swung at me, and I grabbed his arm and I was holding his arm, and he hit me a couple times with his elbow. And I remember that I had a knife in my pocket and I pulled it out, and I was telling him to let go, let go. Let go of the knife. And he wouldn't let go of the knife. And so he was going to stab me, he was going to kill me. When he tried to slash me, he was trying to – he was trying to go for my head or neck or something, and my eye, something like that, but the seat belt kind of caught him. And so I'm holding his arm and he won't let go, and so told him let go of the – let go. He won't let go. I'm like, he's twisting, he's turning, and I'm stabbing him.

[¶27] After the close of evidence, the district court read the jury six instructions related to Mr. Marquez's self-defense claim, including an instruction that the State was required to prove beyond a reasonable doubt that Mr. Marquez did not act in self-defense. And, in his closing, Mr. Marquez's counsel spent a significant portion of time arguing Mr. Marquez acted in self-defense. In doing so, Mr. Marquez's counsel discussed how the confrontation

8

between Mr. Marquez and Mr. Schroeder occurred in the close confines of a vehicle, and how dangerous it would have been for Mr. Marquez to retreat after Mr. Schroeder tried to attack him with a knife.

[¶28]  Finally, the district court noted it had "concerns about whether [Mr. Donahue's] testimony would qualify for admission under Rule 702 and Rule 403."  Although the district court did not reach the issue of admissibility, it would have been reasonable for it to exclude the proposed testimony under Wyoming Rule of Evidence  (W.R.E.) 702.  Specifically, W.R.E. 702 expressly requires that an expert's testimony "help the trier of fact to understand the evidence or to determine a fact in issue."  W.R.E. 702(a).  As we have explained, this means the testimony must be "beyond the knowledge and understanding of the average juror" and "fit" the facts of the case.  *Lyden v. Winer*, 913 P.2d 451, 455 (Wyo. 1996); *Dean*, ¶ 14, 194 P.3d at 303.  In this case, the proposed expert testimony involved matters that the average juror could understand.  The average juror could understand that a knife is a lethal weapon when a person is sitting in close proximity to another person.  The average juror could also understand that it would be dangerous for the driver of a vehicle to try to open his door and exit his vehicle while someone is threatening him with a knife from the passenger's seat.  As for the remainder of Mr. Donahue's proposed testimony—related to specialized law enforcement and military training—it simply did not fit the facts of the case.  That is, there is no indication in the record that Mr. Marquez received the specialized training or was even aware of it.

[¶29]  The district court did not violate Mr. Marquez's right to compulsory process or abuse its discretion when it denied Mr. Marquez's attempt to designate Mr. Donahue as an expert witness less than a week before trial.

> ## II.   The district court did not err in denying Mr. Marquez's motions to suppress.
>
> ### A.   *The Hyundai was within the scope of the search warrant*.

[¶30]  Mr. Marquez contends the district court abused its discretion in denying his first motion to suppress, and that the search of his Hyundai violated the Fourth Amendment to the United States Constitution and Article 1, § 4 of the Wyoming Constitution.  Specifically, he alleged in his motion and now alleges on appeal that the search warrant at issue authorized only a search of the premises where his Hyundai was located, Schmitt Storage, but not the Hyundai itself.  As a result, according to Mr. Marquez, the search of his Hyundai was an impermissible, warrantless search.

[¶31]  The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and

seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[¶32]   Article 1, § 4 of the Wyoming Constitution states:  "The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized."

[¶33]   Mr. Marquez correctly notes the Wyoming Constitution provides greater protections in Article 1, § 4 than the United States Constitution provides in the Fourth Amendment because it requires an affidavit supporting probable cause, rather than a simple oath or affirmation. *See Smith v. State*, 2013 WY 122, ¶ 14, 311 P.3d 132, 136 (Wyo. 2013). However, there is no dispute in this case that the search warrant at issue was supported by an affidavit.  Instead, the dispute is about the scope of the search warrant and accompanying affidavits.  Since Mr. Marquez does not provide any cogent, independent analysis of the Wyoming Constitution as it pertains to the scope of the warrant, we analyze his claim solely under the Fourth Amendment.

[¶34]   As we recently stated in *Garcia v. State*, 2025 WY 17, ¶¶ 17-18, 563 P.3d 484, 489-90 (Wyo. 2025):

> The scope of a warrant is important because the Fourth Amendment requires a search warrant to "particularly describe the place to be searched, and the persons or things to be seized." *Herdt v. State*, 2023 WY 42, ¶ 23, 528 P.3d 862, 867 (Wyo. 2023).  "Whether considering the place or things to be searched, the purpose of the particularity requirement is to 'ensure searches do not exceed the scope of the probable cause justifying them.'" *Id*. at ¶ 24, 528 P.3d at 868 (quoting *United States v. Garcia*, 707 F.3d 1190, 1197 (10th Cir. 2013)).
>
> In determining the adequacy of a search warrant's description of the location to be searched, we look to a two-pronged test: "(1) whether the description is sufficient to enable the executing officer to locate and identify the premises with reasonable effort, and (2) whether there is any reasonable probability that another premise might be mistakenly searched." *Herdt*, 2023 WY 42, ¶ 25, 528 P.3d at 868 (citing

Garcia, 707 F.3d at 1197). In applying this test, we may "construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Herdt*, 2023 WY 42, ¶ 28, 528 P.3d at 868 (quoting *Groh v. Ramirez*, 540 U.S. 551, 557-58, 124 S. Ct. 1284, 157 L. Ed. 2d 1068 (2004)); *see also United States v. Callwood,* 66 F.3d 1110, 1113 (10th Cir. 1995) ("When reviewing a warrant, 'we read together all properly incorporated or referenced components of the warrant, including the attached application and affidavit.'") (quoting *United States v. Occhipinti*, 998 F.2d 791, 799 (10th Cir. 1993)). And "practical accuracy, not technical precision, determines whether a search warrant adequately describes the premises to be searched." *Herdt*, ¶ 26, 528 P.3d at 868 (quoting *Garcia*, 707 F.3d at 1197); *see also Schirber v. State*, 2006 WY 121, ¶ 5, 142 P.3d 1169, 1172 (Wyo. 2006) ("In order to promote the warrant process, and remembering that affidavits are not normally executed by legal technicians, this Court resolves doubtful or marginal cases in this area in favor of sustaining the warrant.").

[¶35]   When a district court denies a motion to suppress, we accept the court's findings of fact unless they are clearly erroneous.  *Elmore v. State*, 2021 WY 41, ¶ 8, 482 P.3d 358, 361 (Wyo. 2021).  We review the question of whether a search was legal de novo, although when a search is conducted pursuant to a warrant, the defendant carries an initial burden of showing his rights were violated.  *Id.*; *Guerra v. State*, 897 P.2d 447, 452 (Wyo. 1995).   In addition, there is a presumption the warrant and supporting affidavit are valid, and doubtful or marginal cases are resolved by sustaining the search.  *Herdt v. State*, 2023 WY 42, ¶ 13, 528 P.3d 862, 865 (Wyo. 2023) (citing *Kreusel v. State*, 2023 WY 9, ¶ 16, 523 P.3d 312, 317 (Wyo. 2023)).

[¶36]   The search warrant in this case was captioned, "THE STATE OF WYOMING, Plaintiff vs. 2008 Maroon Hyundai, 01-77820, VIN: 5NMSH73E78H192353 Defendant." The front page of the warrant stated that Detective Patrick had reason to believe there was "evidence of the crime of homicide or death" in the place to be searched.  Near the top of the warrant, there were four boxes that could be checked to indicate who or what was to be searched: a) "[] on the person of"; b) "[] on the premises of"; c) "[] in the vehicle of 2008 Maroon Hyundai bearing WY registration 01-77820 VIN: 5N 5NMSH73E78H192353; and d) "[] on the property described as."  Despite not including an address, the box for "on the premises of" was checked.  In addition, and despite including a vehicle description, the box for "in the vehicle of" was not checked.  During the first suppression hearing, Detective Patrick testified that this was a mistake, the intended focus of the warrant was the Hyundai, and she intended to check the "in the vehicle of 2008 Maroon Hyundai bearing WY

11

registration 01-77820 VIN: 5N 5NMSH73E78H192353" box. Similarly, toward the bottom of the first page of the search warrant the "on the premises" box was checked and the "in the vehicle" box was left unchecked, although this time it did not include a specific description of the Hyundai.

[¶37] In Detective Patrick's cover affidavit for the search warrant, which was attached to and incorporated by reference into the search warrant, the same four boxes appeared. There, only the box for "in the vehicle of 2008 Maroon Hyundai bearing WY registration 01-77820 VIN: 5N 5NMSH73E78H192353, registered to Justin Marquez" was checked. The cover affidavit also incorporated a more detailed affidavit from Detective Patrick, which stated in relevant part:

> 16. Your Affiant received voice messages from Jeremiah Cox through the Casper Police Department Facebook page. Cox essentially stated he had last observed Schroeder enter a red SUV with a Hispanic male, referred to as an engineer by Schroeder, with dogs inside it. Jeremiah stated he had not heard from or seen Schroeder since this time.
>
> 17. Your Affiant researched vehicles registered to Justin and observed there to be a 2008 maroon Hyundai passenger vehicle bearing WY registration 01-77820 and VIN 5NMSH73E78H192353 as of June 17th, 2021, which expired in January 2022.
>
> 18. Your Affiant spoke with Justin's sister, Andrea Moore, who stated Justin had previously been driving the vehicle but parked it at the family-owned storage facility, Schmitt Storage, approximately one and a half months ago. Justin covered the vehicle with a brown in color tarp. Andrea stated Justin had told her that he was having vehicle issues and has been driving another vehicle since.
>
> 19. A warrant is respectfully requested for the 2008 maroon Hyundai vehicle bearing WY registration 01-77820 and VIN 5NMSH73E78H192353 located at Schmitt Storage, 3291 Paradise Drive, in Casper, WY to search the vehicle for evidence related to the presence of Ryan Schroeder.

[¶38] After considering all of these circumstances, the district court denied the motion to suppress and found the underlying warrant valid. Specifically, the district court found the two "on the premises" boxes of the face of the warrant were mistakenly checked, but that the warrant's caption and Detective Patrick's affidavit "clearly identifie[d]" the Hyundai

12

as the subject of the warrant. In addition, the district court concluded, "similar to *Herdt*, the warrant's caption here and the accompanying affidavit, as well as the executing officer's knowledge of the area to be searched, 'virtually eliminated the possibility' that the incorrect area would be searched."

[¶39] Our task on review is to give the warrant and accompanying affidavits "a practical reading." *Garcia*, ¶ 20, 563 P.3d at 491. When we do so, and when we read the warrant and the incorporated affidavits from Detective Patrick together, it is clear the target of the search was Mr. Marquez's Hyundai, not Schmitt Storage, where the Hyundai was parked. *Herdt*, ¶¶ 25-26, 528 P.3d at 868 ("Practical accuracy, not technical precision, determines whether a search warrant adequately describes the premises to be searched."). We also agree with the district court that there was no reasonable probability that Schmitt Storage or any other location or property might be mistakenly searched. *Id*.

[¶40] Specifically, the warrant and cover affidavit are captioned, "THE STATE OF WYOMING, Plaintiff vs. 2008 Maroon Hyundai, 01-77280, VIN: 5NMSH73E78H192353 Defendant." In addition, the cover affidavit identifies the Hyundai as the subject of the search. While "on the premises" is the box checked in two places on the warrant, the warrant includes no physical address that would serve as the "premises" to be searched. In fact, the only time Schmitt Storage or its physical address are referenced is in Detective Patrick's more detailed affidavit. In both paragraphs where Schmitt Storage is mentioned, it is discussed as the location where Mr. Marquez parked his Hyundai. In contrast, Mr. Marquez's Hyundai is referenced eight times, including in the last four paragraphs of Detective Patrick's detailed affidavit. In the second to last paragraph of the affidavit, Detective Patrick states: "A warrant is respectfully requested for the 2008 maroon Hyundai vehicle bearing WY registration 01-77820 and VIN 5NMSH73E78H192353 located at Schmitt Storage, 3291 Paradise Drive, in Casper, WY to search the vehicle for evidence related to the presence of Ryan Schroeder."

[¶41] Mr. Marquez failed to carry his burden to show that the search of his Hyundai pursuant to the warrant and affidavits at issue violated his rights. The description of what was to be searched in the warrant and accompanying affidavits sufficiently enabled the executing officer to locate and identify the Hyundai with reasonable effort and there was no reasonable probability another premise might be mistakenly searched. As such, the district court did not abuse its discretion or violate Mr. Marquez's constitutional rights when it denied his first motion to suppress.

**B.**   ***The district court did not err in denying Mr. Garcia's motion to suppress based on Franks v. Delaware.***

[¶42] Mr. Marquez's final argument on appeal is that the district court abused its discretion by denying his second motion to suppress based on *Franks v. Delaware*. Specifically, Mr. Marquez argues Detective Patrick's search-warrant affidavits included

material misrepresentations, and that Detective Patrick knowingly or recklessly omitted facts from the affidavit to mislead the district court. According to Mr. Marquez, if Detective Patrick had included the proper facts in the affidavit, it would not have established probable cause to search his Hyundai.

[¶43]   For a search warrant to be valid, all the circumstances explained in any supporting affidavit must provide the issuing judge a "substantial basis" to make an independent judgment that there is probable cause. *Herdt*, ¶ 13, 528 P.3d at 865 (citing *Illinois v. Gates*, 462 U.S. 213, 230, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)) (other citation omitted). When we review an affidavit, "we consider the affidavit in its totality, interpreting it in a realistic and common sense manner to determine if it presents probable cause supporting the issuance of the warrant." *Id*. (quoting *Kreusel*, ¶ 16, 523 P.3d at 317). "[W]e begin with the presumption the warrant and supporting affidavit are valid" and "resolve doubtful or marginal cases by sustaining the search." *Id.* (citations omitted).

[¶44]   Under *Franks v. Delaware*:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks*, 438 U.S. at 155-56, 98 S.Ct. at 2676; *see also Lefferdink v. State*, 2011 WY 75, ¶ 9, 250 P.3d 173, 176 (Wyo. 2011) (quoting *Davis v. State*, 859 P.2d 89, 92-93 (Wyo. 1993)). Importantly, innocent mistakes and even negligence are insufficient grounds to set aside misstatements. *Davis*, 859 P.2d at 94 (citing *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684).

[¶45]   The *Franks* rationale also applies to information recklessly or deliberately omitted from a search-warrant affidavit. *Herdt*, ¶ 15, 528 P.3d at 865-66 (citations omitted). In such situations, a defendant must show "(1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, ... and (2) that the affidavit if supplemented by the omitted information would not have been

14

sufficient to support a finding of probable cause." *Id.* (citation omitted); *see also Kapinski v. City of Albuquerque*, 964 F.3d 900, 905 (10th Cir. 2020) (citation omitted); *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008) (citations omitted).

[¶46] "To establish recklessness, there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations." *Garcia*, ¶ 23, 563 P.3d at 492 (quoting *Kapinski*, 964 F.3d at 908) (other citation omitted). Recklessness may be inferred from "circumstances evincing obvious reasons to doubt the veracity of the allegations" or from "omission of facts which are 'clearly critical' to a finding of probable cause." *Id.* (citing *Kapinski*, 964 F.3d at 908) (other citations omitted)).

[¶47] Finally, if a court denies a motion to suppress based on a combined *Franks* and suppression hearing, we review the court's factual findings for clear error on "whether information was omitted intentionally to make, or with reckless disregard to whether it made, the affidavit misleading." *Herdt*, ¶ 16, 528 P.3d at 866 (citing *United States v. Garcia-Zambrano*, 530 F.3d at 1254; *Lefferdink*, ¶ 8, 250 P.3d at 175-76 (citation omitted)). "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Garcia*, ¶ 25, 563 P.3d at 492. We also view the evidence in the light most favorable to the district court's determination since that court had the opportunity to assess witness credibility, weigh the evidence, and make any necessary inferences, deductions, and conclusions at the hearing. *Id.* (citing *Elmore v. State*, 2021 WY 41, ¶ 8, 482 P.3d 358, 361 (Wyo. 2021) (quoting *Pryce v. State*, 2020 WY 151, ¶ 16, 477 P.3d 90, 94-95 (Wyo. 2020)).

[¶48] In his motion to suppress and on appeal, Mr. Marquez asserts Detective Patrick's cover affidavit and the warrant improperly indicated Detective Patrick believed authorities would find cleaning agents or other items that could be "used to remove blood and biological evidence" in a search of Mr. Marquez's Hyundai. According to Mr. Marquez, Detective Patrick's inclusion of these items was improper because it was generalized and based on her law enforcement training, not on facts relevant to Mr. Marquez's case. Mr. Marquez also asserts Mr. Schroeder's body had not been found at the time Detective Patrick signed the cover affidavit, making whether she might find cleaning agents speculative.[1]

---

[1] Mr. Marquez also explained in his appellate brief that Detective Patrick included in the search warrant and cover affidavit a statement that she believed authorities would find "evidence which shows or tends to show an area was recently remodeled or fixed such as carpet remnants, drywall patches, and other construction/remodeling agents[.]." Detective Patrick testified at the combined *Franks* and suppression hearing that this was a "copy and paste" mistake that occurred when she used a prior search warrant and cover affidavit involving a different party. However, Mr. Marquez conceded that he "does not argue this drafting error contributed to the circuit court's authorization of a search of Mr. Marquez's Hyundai."

[¶49]  Mr. Marquez also asserts Detective Patrick's primary affidavit improperly omitted important information received from Mr. Marquez's sister, Ms. Moore.  Specifically, he asserts Detective Patrick should have included in her affidavit that Ms. Moore told her: a) it was not unusual for Mr. Marquez to have car trouble because he owned low quality cars; b) it was not unusual for him to park vehicles at Schmitt Storage; and c) Mr. Marquez placed a tarp on his Hyundai to protect the windows.  Mr. Marquez asserts this information should have been included in Detective Patrick's affidavit because it offset the implication from the affidavit that Mr. Marquez acted suspiciously by parking the Hyundai at Schmitt Storage and covering it with a tarp.

[¶50]  At the combined *Franks* and suppression hearing, Detective Patrick testified about both of these topics.  Regarding the inclusion of cleaning agents, Detective Patrick testified she included this in the cover affidavit based on her training and experience, as well as the fact that Mr. Schroeder was last seen with Mr. Marquez.  According to Detective Patrick:

> We believed that Mr. Schroeder had met an untimely demise and was obviously killed as he was 30 years old with no known medical problems and was missing under suspicious circumstances.
>
> We believed that since he was last in Mr. Marquez's – that we would find that he would be – the last known place would be Mr. Marquez's vehicle, and since Mr. Marquez had since driven that vehicle, nobody is going to drive a vehicle if there is blood spattered over the windows, so it would be reasonable that somebody would clean it up.

Regarding the omission of some of the information she learned from talking with Ms. Moore, Detective Patrick testified she did not think the information at issue was pertinent to the search warrant.

[¶51]  In its subsequent order denying the second motion to suppress, the district court relied upon Detective Patrick's explanation for why she included cleaning agents in the cover warrant and concluded Mr. Marquez failed to carry his burden of proving an intentional or reckless misrepresentation.  The district court also relied on Detective Patrick's testimony about why she did not include certain information from Ms. Moore in her affidavit, finding, Detective Patrick's reason for not including the other information received from Mr. Marquez's sister falls short of "deliberately or recklessly" omitting relevant information that may affect a finding of probable cause.  Finally, the district court found that setting aside the information from the warrant to which Mr. Marquez objected, there still would have been probable cause to search Mr. Marquez's Hyundai.

[¶52] When we review the record in the light most favorable to the district court's findings, it supports the district court's denial of Mr. Marquez's second motion to suppress. Specifically, we find no clear error in the district court's conclusion that Mr. Marquez failed to carry his burden to show Detective Patrick intentionally or recklessly misrepresented material information from her affidavits. Inclusion of cleaning agents as something Detective Patrick expected to find during a search was not a misrepresentation, and certainly not an intentional or reckless one. Based upon the circumstances, it was reasonable for Detective Patrick to include this information in the warrant and cover affidavit. In addition, there still would have been probable cause for police to search Mr. Marquez's car without including that information.

[¶53] Similarly, we find no clear error in the district court's conclusion that Mr. Marquez failed to carry his burden to show Detective Patrick intentionally or recklessly omitted material information from her conversation with Ms. Moore. The information excluded was background information related to Mr. Marquez's historical use of Schmitt Storage for vehicle storage and the fact that he parked the Hyundai there and covered the windows. If anything, including Ms. Moore's statement about using a tarp to protect the windows would have contributed to the probable cause, not defeated it. Regardless, including this information in the warrant and affidavits would not have diminished the probable cause that existed for searching Mr. Marquez's Hyundai. As a result, we affirm the district court's rejection of Mr. Marquez's *Franks* claim.

## CONCLUSION

[¶54] The district court did not abuse its discretion when it denied Mr. Marquez's motion to designate an expert witness a week prior to trial. The district court also did not err in denying Mr. Marquez's two motions to suppress.

[¶55] Affirmed.

17